# FOR PUBLICATION



FILED

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**JAMES T. ACKLIN**
Chief Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

VICTOR PONCE,                              )
                                          )
    Appellant-Petitioner,              )
                                          )
    vs.                                )   No. 20A04-1208-PC-396
                                          )
STATE OF INDIANA,                          )
                                          )
    Appellee-Respondent.               )

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry C. Shewmaker, Judge
Cause No. 20C01-1001-PC-1

**March 7, 2013**

**OPINION – FOR PUBLICATION**

**MATHIAS, Judge**

Victor Ponce ("Ponce") appeals the Elkhart Circuit Court's denial of his petition for post-conviction relief, claiming that the court erred in rejecting Ponce's claim that he was not properly advised of his constitutional rights before pleading guilty and that he therefore did not knowingly and voluntarily waive these rights. Concluding that the post-conviction court could have properly concluded that Ponce did not present evidence sufficient to support his claims, we affirm.

**Facts and Procedural History**

On March 31, 1999, the State charged Ponce with two counts of Class A felony dealing in cocaine within 1,000 feet of a school. On September 9, 1999, Ponce entered into a plea agreement with the State.[1] Pursuant to the terms of the agreement, Ponce agreed to plead guilty to one count of Class A felony dealing in cocaine, and the State agreed to dismiss the other count.

The written plea agreement, which was signed by Ponce and his counsel, stated in part:

> I understand that by pleading guilty I will be giving up and waiving my right to a public and speedy trial by jury, to confront and cross-examine the witnesses against me, to have compulsory process for obtaining witnesses in my favor, and to require the State to prove my guilt beyond a reasonable doubt at trial at which I may not be compelled to testify against myself.

Appellant's App. p. 181.

---

[1] Ponce had entered into another plea agreement on August 5, 1999, under the terms of which he agreed to plead guilty to dealing in cocaine as a Class B felony. For reasons that are not entirely clear on the

The trial court held a guilty plea hearing on September 9, at which the court used the services of Monica Castillo ("Castillo") to act as an interpreter[2] to and from the English and Spanish languages. Before advising Ponce of his rights, the trial court asked him, through Castillo, whether he could, "read, write, and understand the English language." Castillo translated this into Spanish as, "¿Escribes, hablas y entiendes el ingles?" Castillo replied in Spanish, "Lo entiendo, y lo hablo un poco." Ex. Vol., Defendant's Ex. G, p. 5. Castillo translated this as "He understands a little and speaks a little English." But according to Ponce's own expert witness,[3] a more accurate translation of Ponce's statement is, "*I understand it*, and I speak it a little." Id. (emphasis added).

The trial court then orally advised Ponce of his Boykin rights: the right against self-incrimination, the right to a jury trial, and the right to confront witnesses. See Boykin v. Alabama, 395 U.S. 238, 243 (1969) (holding that a guilty plea is invalid under the Fourteenth Amendment unless the defendant knew or was told that he was giving up the right against self-incrimination, the right to trial by jury, and the right to confront his accusers). Castillo relayed these advisements to Ponce in Spanish.[4] The trial court then accepted the plea and sentenced Ponce to forty years executed.

---

[2] As the United States Supreme Court recently explained, "interpreter" ordinarily means one who translates *orally* from one language to another, but it does not include those who translate writings. Taniguchi v. Kan Pac. Saipan, Ltd., ___ U.S. ___, 132 S. Ct. 1997, 2000-03 (2012).

[3] Ponce's expert witness was a certified court interpreter. Although Castillo was not a certified court interpreter, there were no procedures in Indiana for such certification at the time of the guilty plea hearing. The Indiana Court Interpreter Program Advisory Board was created in 2003, and the Indiana Interpreter Code of Conduct and Procedure Rules were adopted in 2008.

[4] As noted in detail below, Ponce presented evidence at the post-conviction hearing that this translation was less than accurate.

On October 29, 2009, Ponce filed a pro se petition for post-conviction relief. After counsel was appointed to represent Ponce, he filed an amended petition for post-conviction relief on October 17, 2011. The post-conviction court held a hearing on this petition on May 15, 2012. At the post-conviction hearing, Ponce presented evidence from Christina Courtright ("Courtright"), an interpreter certified by the Indiana Supreme Court. Courtright had listened to the audio recording of Ponce's guilty plea hearing and compared what the trial court stated in English to what Castillo had told Ponce in Spanish. In so doing, Courtright found several translation errors. Courtright prepared a chart, which was admitted into evidence at the hearing, which outlined what was said in English, what Castillo told Ponce, and what Courtright determined was a more accurate translation of what the trial court had said. Courtright testified that Castillo had translated certain legal terms inaccurately and that each of the three Boykin advisements had been mistranslated. The trial court took the matter under advisement, and directed the parties to submit proposed findings of fact and conclusions of law.

On August 1, 2012, the trial court entered findings of fact and conclusions of law denying Ponce's petition, which provided in relevant part:

> 13. Petitioner also contends that his plea was involuntary because he did not understand the terms and that he was not properly advised of his Boykin rights: 1) his right to a trial by jury, 2) his right to confront witnesses against him, and 3) his right against self incrimination. Boykin v. Alabama, 395 U.S. 238 (1969). It is significant to note that Petitioner does not contend that the court failed to advise him of his Boykin rights. Rather, Petitioner alleges that the poor quality of the Spanish language interpretation during the plea hearing was tantamount to the failure to properly advise him.
>
> * * *

4

15. In the instant case, [Ponce's trial counsel] testified that he met with Petitioner several times, communicated the terms of the Plea Agreement with Petitioner using a Spanish interpreter, and that he believed that Petitioner understood the terms of the Plea Agreement. Petitioner did not testify in these post conviction proceedings that he did not understand his rights or the terms of his plea agreement. Rather, Petitioner relies entirely upon the testimony of Spanish language interpreter/translator Christina Courtright. Ms. Courtright testified using a chart she prepared listing her opinion regarding alleged infirmities in the English-Spanish interpretation of the plea hearing. Although qualified as an expert, Mr. Courtright cannot speculate on what Petitioner did and did not understand. Moreover, Ms. Courtright prepared the subject chart after listening to the audio recordings of the plea hearing, and acknowledged that there were portions of the recordings that were unintelligible.

16. Furthermore, the court notes that the Plea Agreement that Petitioner initialed and signed contained all the rights required by Boykin. While a signed waiver of rights may not be sufficient to satisfy Boykin advisement requirements when a trial court asks only a few perfunctory questions, none of which specifically address the rights being waived, Lime, supra, 619 N.E.2d at 605, such was not the case here. During the plea hearing, the court advised Petitioner, "If you do not understand the words or questions that I use, please let me know." (Plea Hearing Transcript, p. 7). According to Ms. Courtright's chart, Exhibit "G", that portion of the hearing was accurately interpreted. The court also asked Petitioner, "Are you able to understand the conversation we're having through the translator?" (Tr., p. 7). This inquiry was also interpreted accurately. At no time did Petitioner indicate that he did not understand the court through the translator. In fact, Petitioner was asked by the court if he read, wrote, and understood the English language, and Petitioner responded, "I understand it, and I speak it a little." (Tr., p. 7).

17. For all these reasons, . . . the evidence does not establish that Petitioner did not understand his rights or the terms of the Plea Agreement. Therefore, Petitioner did not enter the plea involuntarily.

18. In sum, although there is some evidence that the interpretation at issue was poor, there is no evidence that Petitioner did not understand his Boykin rights. Unlike the court in Lime, this court intently advised Petitioner and Petitioner never once indicated that he did not understand what he was being told. Petitioner acknowledged his Boykin rights in the Plea Agreement, and he is no stranger to the legal system. See, Pre-Sentence Investigation Report. For these reasons, the

5

court concludes that in light of the totality of the circumstances, Petitioner has failed to prove by a preponderance of the evidence that he did not understand the <u>Boykin</u> rights advisement.

Appellant's App. pp. 159-161.  Ponce now appeals.

### Post-Conviction Standard of Review

Post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal.  <u>McCary v. State</u>, 761 N.E.2d 389, 391 (Ind. 2002).  Post-conviction proceedings instead afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal.  <u>Davidson v. State</u>, 763 N.E.2d 441, 443 (Ind. 2002).  A post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence.  <u>Henley v. State</u>, 881 N.E.2d 639, 643 (Ind. 2008).  On appeal from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment.  <u>Id</u>.  Thus, to prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court.  <u>Id</u>. at 643-44.

Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post–Conviction Rule 1(6), we cannot affirm the judgment on any legal basis but instead must determine if the court's findings are sufficient to support its judgment.  <u>Graham v. State</u>, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), <u>aff'd on reh'g</u>, 947 N.E.2d 962.  Although we do not defer to the post-conviction court's legal conclusions, we review the post-conviction court's factual findings under a

6

clearly erroneous standard. Id. Accordingly, we will not reweigh the evidence or judge the credibility of witnesses, and we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. Id.

**Discussion and Decision**

In Boykin v. Alabama, 395 U.S. 238, 242 (1969), the United States Supreme Court held that it was reversible error for a trial judge to accept a guilty plea without an affirmative showing that it was intelligent and voluntary. Boykin requires that the record must show, or there must be an allegation and evidence which show, that the defendant was informed of and waived three specific federal constitutional rights: the privilege against compulsory self-incrimination, right to trial by jury, and the right to confront one's accusers. Id. at 243; accord Hall v. State, 849 N.E.2d 466, 469 (Ind. 2006).[5]

Nevertheless, it has since been held that "Boykin 'does not require that the record of the guilty plea proceeding show that the accused was formally advised that entry of his guilty plea waives certain constitutional rights[,]' nor does Boykin require that the record contain a formal waiver of these rights by the accused." Dewitt v. State, 755 N.E.2d 167, 171 (Ind. 2001) (quoting State v. Eiland, 707 N.E.2d 314, 318 (Ind. Ct. App. 1999),

---

[5] As noted in Weatherford v. State, 697 N.E.2d 32, 35 n.8 (Ind. 1998), Indiana has codified this requirement in Indiana Code section 35-35-1-2, which provides that a trial court shall not accept a guilty plea unless the defendant has been advised, among other things, that by pleading guilty he waives his right to:
    (A) a public and speedy trial by jury;
    (B) confront and cross-examine the witnesses against the defendant;
    (C) have compulsory process for obtaining witnesses in the defendant's favor; and
    (D) require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at
        which the defendant may not be compelled to testify against himself or herself . . . .
I.C. § 35-35-1-2(a)(2).

7

opinion adopted by 723 N.E.2d 863 (Ind. 2000)).  Instead, Boykin requires a conviction to be vacated only if the defendant did not know or was not advised at the time of his plea that he was waiving his Boykin rights.  Id. (citing Davis v. State, 675 N.E.2d 1097, 1103 (Ind. 1996); United States ex rel. Miller v. McGinnis, 774 F.2d 819, 824 (7th Cir. 1985)).  As then-Chief Justice Shepard explained in Youngblood v. State, 542 N.E.2d 188 (Ind. 1989), "knowledge of rights may be reflected either in the original record or through allegation and proof."  Id. at 189 (citations omitted).

Here, Ponce presented evidence at the post-conviction hearing that Castillo's Spanish translation of the trial court's proper English language Boykin advisement was defective.  According to Ponce's witness Courtright, when the trial court advised Ponce, "you have the right to a public and speedy trial by jury," Castillo translated this into Spanish as, "He's—he's advising you that you have the right to another—another judging [unintelligible] speedier."  Ex. Vol. Defendant's Ex. G, p. 7.  When the trial court told Ponce in English, "You also have the right to face all witnesses against you and to see, hear, question, and cross-examine these witnesses," Castillo told Ponce in Spanish, "And you also have the right to see those who have the witnesses and . . . to ask if it's all right [unintelligible]."  Id. at 8.  When the trial court explained to Ponce in English, "You also have the right to require witnesses to be present at any hearing or trial and to testify in your behalf," Castillo told Ponce in Spanish, "And you can also require witnesses to come for your case so that, in case you have some . . . to help you."  Id.  And when the trial court advised Ponce in English, "Further, you cannot be compelled to make any statement or testify against yourself at any hearing or trial . . . but you may remain silent,"

8

Castillo translated this into Spanish as, "And until that date you cannot make other oaths against yourself . . . but you can remain silent." Id.

The post-conviction court did not cast doubt on the accuracy of Courtright's testimony. Instead, the post-conviction court properly observed that, even if Ponce was not properly advised in Spanish of his Boykin rights, the conviction need not be vacated if Ponce nevertheless knew at the time of his plea that he was waiving his Boykin rights. See Dewitt, 755 N.E.2d at 171. The post-conviction court also noted that Ponce had indicated to the trial court that he did, in fact, understand English and could even speak "a little" English. Moreover, Ponce never testified at the post-conviction hearing; thus, there was no evidence to counter Ponce's earlier statement that he understood English, and it is uncontroverted that the trial court's Boykin advisement in English was accurate.[6]

Nor was there any evidence from Ponce that he did not, in fact, know that he was waiving his rights.[7] To the contrary, Ponce's trial counsel testified at the post-conviction hearing that he explained the terms of the plea agreement, which included the Boykin advisements, to Ponce several times using a Spanish interpreter[8] and that, in his opinion, Ponce understood the terms of the plea agreement.

---

[6] Thus, Ponce's citation to Turman v. State, 271 Ind. 332, 392 N.E.2d 483 (1979), is unavailing. In that case, the court held that the trial judge's erroneous statement in open court outweighed the impact of the correct statement of law contained in the plea agreement. Id. at 332, 392 N.E.2d at 488. In contrast, here, the trial judge's advisement was completely correct.

[7] In Youngblood, our supreme court held that if the defendant has demonstrated that the plea hearing was not conducted in accordance with Boykin, the State may affirmatively prove in a post-conviction hearing that the plea was voluntary and intelligent in order to obviate the necessity of vacating the plea. 542 N.E.2d at 189. Here, however, Ponce never even established that the plea hearing was deficient under Boykin, and the burden of proving the voluntariness of Ponce's plea never shifted to the State.

[8] Ponce's trial counsel testified that, to his recollection, he did not use Castillo as his interpreter when discussing the terms of the plea agreement with Ponce.

9

We reiterate that Ponce faces a substantial burden on appeal from the denial of his post-conviction petition. See Henley, 881 N.E.2d at 643-44. Considering only the evidence favorable to the post-conviction court's decision, and the reasonable inferences to be drawn therefrom, we cannot say that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Accordingly, we must affirm the decision of the post-conviction court.

Affirmed.

KIRSCH, J., and CRONE, J., concur.