ATTORNEYS FOR APPELLANT
Stephen T. Owens
Public Defender of Indiana

James T. Acklin
Chief Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Joseph Y. Ho
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court



FILED
Jun 05 2014, 8:48 am

CLERK
of the supreme court,
court of appeals and
tax court

No. 20S04-1308-PC-533

VICTOR PONCE,

*Appellant (Petitioner below),*

v.

STATE OF INDIANA,

*Appellee (Respondent below).*

Appeal from the Elkhart Circuit Court, No. 20C01-1001-PC-1
The Honorable Terry C. Shewmaker, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 20A04-1208-PC-396

**June 5, 2014**

**Rucker, Justice.**

Victor Ponce is a non-native English speaker who pleaded guilty under terms of an agreement. He appeals the denial of his petition for post-conviction relief essentially contending that the Spanish translation of the rights he was waiving by entering the plea was so inaccurate his plea of guilty was not entered knowingly, intelligently, and voluntarily. We agree and reverse the judgment of the post-conviction court.

## Background

Over the last few decades, language diversity across the country has grown rapidly and non-English languages increasingly play a "continuing and growing role . . . as part of the national fabric." Camille Ryan, U.S. Census Bureau, Language Use in the United States: 2011 15 (August 2013). English speaking abilities vary throughout the country and like most states across our nation Indiana is no stranger to language diversity. For example in 2011, 8.2% of Indiana's population spoke a language other than English at home and when asked to classify their level of English proficiency nearly 17% responded "not well" or "not at all." Id. at 2, 11. These linguistic barriers limit individuals' ability to participate fully in an English-speaking society and have a direct impact on their education, employment opportunities, poverty status, and even medical care. Id. at 10.

Among the most significant obstacles that persons of Limited English Proficiency (commonly referred to as "LEP") must overcome are the challenges to meaningful access to the courts. Impaired access to justice resulting from language inequalities is particularly damaging in the criminal context when someone's very liberty is at stake and a faulty trial can have irrevocable consequences. Essentially, for "the 'language-impaired' . . . due process is an empty charade because of their inability to communicate effectively or to comprehend the proceedings against them." Virginia E. Hench, What Kind of Hearing? Some Thoughts on Due Process for the Non-English-Speaking Criminal Defendant, 24 T. Marshall L. Rev. 251, 253 (1999). *Due process* is far more than a term of art. "[T]he fundamental requirement of procedural due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Perdue v. Gargano, 964 N.E.2d 825, 832 (Ind. 2012) (citing Goldberg v. Kelly, 397 U.S. 254, 267

(1970)). In order for this constitutional protection to have meaning for the LEP litigant, due process must include not only the opportunity *to be heard* but also the opportunity *to hear*.

Both federal and state courts recognize the daunting challenges faced by LEP individuals; and courts are working diligently to eliminate those challenges. At the forefront of this initiative is an effort to provide competent interpreters for all LEP litigants. State and federal systems as well as independent agencies are working collaboratively to provide guidance in developing interpreter services. See generally Nat'l Ctr. for State Courts, A National Call to Action Access to Justice for Limited English Proficient Litigants: Creating Solutions to Language Barriers in State Courts (2013); Standing Committee on Legal Aid and Indigent Defendants, American Bar Association, Standards for Language Access in Courts (February 2012) [hereinafter "ABA Standards"]. Ensuring competent interpretation services is "an essential component of a functional and fair justice system." ABA Standards, supra, 1. The lack of qualified interpreters affects the system of justice as a whole. Id. "Judges cannot administer justice when litigants in their courtrooms are unable to understand what is going on, or to convey crucial information to the court." Laura Abel, Brennan Center for Justice, Language Access in State Courts 5 (2009).[1] This is equally damaging to the State's interests as well as those of the defendant. See, e.g., Arrietta v. State, 878 N.E.2d 1238, 1240 n.2 (Ind. 2008) (recounting instance when charges of child abuse were "dismissed on speedy trial grounds after three-year failure to find interpreter fluent in defendant's native language"); Abel, supra, 32 (explaining that lack of interpreters exacerbates the problem of unnecessary delays in the court system).

For the last decade the State of Indiana has endeavored to create a more comprehensive and centralized interpreter program that ensures competent interpreter services in order to improve the quality of language access for LEP litigants.[2]  "Audits of interpreted court

---

[1] Available at
http://www.brennancenter.org/sites/default/files/legacy/Justice/LanguageAccessinStateCourts.pdf.

[2] The Indiana Court Interpreter Program is a statewide court interpreter system, which includes a code of ethics for interpreters and sets specific certification standards. See Ind. Jud. Branch Div. of State Ct. Admin., Court Interpreter Certification Program, About the Program, Introduction, http://www.in.gov/judiciary/interpreter/2384.htm [hereinafter "Certification Program"]; see also Randall T. Shepard, Access to Justice for People Who Do Not Speak English, 40 Ind. L. Rev. 643, 652-57 (2007) (explaining "Indiana's Initiatives on Interpreter Needs"). At present, in conjunction with the National

proceedings in several states have revealed that untested and untrained 'interpreters' often deliver inaccurate, incomplete information to both the person with limited English proficiency and the trier of fact." Certification Program. Therefore, simply providing "any" interpreter upon request is insufficient. A "failure to accommodate persons with [language] disabilities will often have the same practical effect as outright exclusion[.]" Tennessee v. Lane, 541 U.S. 509, 531 (2004) (discussing claim made by paraplegics that state denied them access to the courts). Thus, it is imperative to ensure accurate interpretation throughout the proceedings lest we run the risk of diminishing our system of justice by infringing upon the defendant's rights of due process. It is with this background that we turn to the facts of this case.

## Facts and Procedural History

In 1999 Victor Ponce was charged with two counts of delivery of cocaine within one thousand feet of a school, as a Class A felony. Pursuant to an agreement Ponce decided to plead guilty to one of the counts. At his guilty plea hearing Ponce requested an interpreter which the trial court provided. As explained in more detail below the trial court, through the interpreter, advised Ponce of his Boykin rights[3] and Ponce thereafter pleaded guilty as agreed. Ten years later Ponce filed a *pro se* petition for post-conviction relief which was amended by counsel in 2011. Among other things the petition alleged that Ponce's plea was not entered knowingly, intelligently and voluntarily because the court-appointed interpreter failed to translate accurately Ponce's Boykin rights.[4] The post-conviction court denied Ponce's petition for relief, specifically

---

Center for State Courts Consortium, Indiana's certification program includes 22 different languages. See Certification Program, Get Certified. However, interpreter services are needed in even more languages; but certification is not currently available. Consequently, this Court is considering the efforts of other jurisdictions that employ a process by which interpreters may be classified as "qualified" to conduct simultaneous, in-court, oral interpretation or written translation even though they have not undergone the requirements for court "certification."

[3] In Boykin v. Alabama the United States Supreme Court declared that the record for a guilty plea must show the defendant voluntarily and understandingly waived the following federal constitutional rights: (1) "the privilege against compulsory self-incrimination;" (2) "the right to trial by jury;" and (3) "the right to confront one's accusers." 395 U.S. 238, 242-43 (1969).

[4] Ponce also raised an ineffective assistance of counsel claim before the post-conviction court, alleging that trial counsel was ineffective for advising him to accept a plea agreement that contained what he

4

rejecting Ponce's argument that his plea was not knowingly and voluntarily given. Ponce appealed and the Court of Appeals affirmed the judgment of the post-conviction court, concluding that although the advisement was "defective" Ponce nonetheless knew at the time of the plea hearing that he was waiving his Boykin rights. Ponce v. State, 992 N.E.2d 726, 731 (Ind. Ct. App. 2013), vacated. Having previously granted Ponce's petition to transfer thereby vacating the opinion of the Court of Appeals, see Ind. Appellate Rule 58(A), we now reverse the judgment of the post-conviction court. Additional facts are recounted below.

**Discussion**

As we have previously declared: "In considering the voluntariness of a guilty plea we start with the standard that the record of the guilty plea proceeding must demonstrate that the defendant was advised of his constitutional rights and knowingly and voluntarily waived them." Turman v. State, 392 N.E.2d 483, 484 (Ind. 1979) (citing Boykin, 395 U.S. at 242). And Boykin requires that a trial court accepting a guilty plea "must be satisfied that an accused is aware of his right against self-incrimination, his right to trial by jury, and his right to confront his accusers."[5] Dewitt v. State, 755 N.E.2d 167, 171 (Ind. 2001) (citing Boykin, 395 U.S. at 243). The failure to advise a criminal defendant of his constitutional rights in accordance with Boykin prior to accepting a guilty plea will result in reversal of the conviction. Youngblood v. State, 542 N.E.2d 188, 188 (Ind. 1989) (quoting White v. State, 497 N.E.2d 893, 905 (Ind. 1986)). Accordingly, a defendant who demonstrates that the trial court failed to properly give a Boykin advisement during the guilty plea hearing has met his threshold burden for obtaining post-conviction relief.

---

contended was an "illusory benefit." App. at 107 (3d Am. Pet. at 1, ¶8(b)). The post-conviction court rejected this argument. Ponce does not advance this claim on appeal.

[5] As we observed in Weatherford v. State, 697 N.E.2d 32, 35 n.8 (Ind. 1998), Indiana has codified this requirement; and a trial court may not accept a guilty plea unless the defendant has been advised, among other things, that he waives his right to: "(A) a public and speedy trial by jury; (B) confront and cross-examine the witnesses against the defendant; (C) have compulsory process for obtaining witnesses in the defendant's favor; and (D) require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant may not be compelled to testify against himself or herself." Ind. Code § 35-35-1-2(a)(2).

The record shows that at the 1999 guilty plea hearing the court appointed Christina Castillo as an interpreter.[6] The trial court asked Ponce through the interpreter if he read, wrote, and understood the English language, to which Ponce responded: "Lo entiendo, y lo hablo un poco." Ex. G at 5. Interpreter Castillo restated this to the court in English as: "He understands a little and speaks a little English." Guilty Plea Tr. at 7.[7] The trial court informed Ponce through the interpreter: "If you do not understand the words or questions that I use, please let me know[.]" Guilty Plea Tr. at 6. The court then asked: "Are you able to understand the conversation we're having through the translator?" Guilty Plea Tr. at 7. These statements were interpreted to Ponce accurately and he indicated that he was able to understand the proceedings through Interpreter Castillo. The trial court then properly advised Ponce in English of his <u>Boykin</u> rights. Interpreter Castillo communicated with Ponce in Spanish regarding these advisements and Ponce responded in Spanish that he understood the court's advisements.

At his post-conviction relief hearing in 2012 Ponce still struggled with the English language. Even at that time—*thirteen years* after he had pleaded guilty—the post-conviction court acknowledged that "when we get to legal terms [Ponce] need[s] a Spanish translator[.]" P.C.R. Tr. at 2. Ponce called as a witness Christina Courtright, a certified court interpreter. Interpreter Courtright testified about the discrepancies between the trial court's advisements and the Spanish language statements given to Ponce by Interpreter Castillo. She explained that Interpreter Castillo inaccurately restated the advisements to Ponce as represented below:

| Court's Advisement in English | English Equivalent of Spanish Interpretation Given to Ponce |
| --- | --- |
| Mr. Ponce, I now advise you that you have the right to a public and speedy trial by jury. | He's—he's advising you that you have the right to another—another judging [2 syllables unintelligible] speedier. Okay? |

---

[6] At the time of Ponce's guilty plea hearing Indiana had not yet created the Court Interpreter Certification Program. Thus, Interpreter Castillo was uncertified as there was no formalized certification system for court interpreters in the state.

[7] The record includes a transcript of the September 9, 1999 guilty plea hearing, which we will refer to as "Guilty Plea Tr." The record also contains a transcript of the May 25, 2012 hearing on Ponce's petition for post-conviction relief, which we will refer to hereinafter as "P.C.R. Tr."

6

| You also have the right to face all witnesses against you and to see, hear, question, and cross-examine these witnesses. | And you also have the right to see those who have the witnesses and . . . to ask if it's all right [1 syllable unintelligible]. |
|---|---|
| * * * | * * * |
| Further, you cannot be compelled to make any statement or testify against yourself at any hearing or trial . . . but you may remain silent. | And until that date you cannot make other oaths against yourself . . . but you can remain silent. |

See Ex. G at 7-8.[8]  At the conclusion of the hearing the post-conviction court found, among other things: "At no time did Petitioner indicate that he did not understand the court through the translator." App. at 161 (P.C. Order at 7, ¶16).  The post-conviction court as well as the Court of Appeals acknowledged that the interpretation was "defective," Ponce, 992 N.E.2d at 731, even calling it "poor," App. at 161 (P.C. Order at 7, ¶18), but took the position that Ponce knew at the time of the plea hearing that he was waiving his Boykin rights.  In particular, like the post-conviction court, the Court of Appeals concluded that "Ponce never even established that the plea hearing was deficient under Boykin[.]"  Ponce, 992 N.E.2d at 732 n.7; see also App. at 161 (Order at 7, ¶18 ("[T]here is no evidence that Petitioner did not understand his Boykin rights.")). We disagree with our colleagues.

As this Court has observed, "one may fully understand and even acknowledge to others an understanding of what is in actuality an inaccurate interpretation of the proceedings.  Put another way, one can understand perfectly the words spoken by an interpreter who tells you the wrong thing." Diaz v. State, 934 N.E.2d 1089, 1095 (Ind. 2010).  Here there is no question that the trial court correctly articulated the specific rights enumerated in Boykin.  The problem, however, is that those rights were inaccurately interpreted.  Ponce may very well have understood exactly what the interpreter said but as the record shows what the interpreter said had little to do with what the trial court had actually advised.

---

[8] After listening to the audio recording of the guilty plea hearing, Interpreter Courtright compared what the judge said in English with what was interpreted to Ponce in Spanish.  Courtright presented her comparison in a chart that was admitted into evidence as Exhibit G.  The State does not dispute Courtright's interpretation of the audio recording.

Courts have long recognized that "a foreign language defendant's capacity to understand and appreciate the proceedings, to participate with his counsel, to confront his accusers, and to waive rights knowingly and intelligently, is undermined without an interpreter actively participating in his defense." United States v. Cirrincione, 780 F.2d 620, 633 (7th Cir. 1985) (citing United States ex rel. Negron v. New York, 434 F.2d 386, 389 (2d Cir. 1970)). Undoubtedly, the defendant is denied due process when, among other things, "what is told him is incomprehensible [or] the accuracy and scope of a translation at a hearing or trial is subject to grave doubt[.]" Cirrincione, 780 F.2d at 634. For this reason we have declared that a "defendant who cannot speak or understand English has [the] right to have his proceedings simultaneously translated to allow for effective participation." Diaz, 934 N.E.2d at 1095 (alteration in original) (quoting Martinez Chavez v. State, 534 N.E.2d 731, 736 (Ind. 1989) (citation omitted)). We elaborated that such interpretation must include "the precise form and tenor of each question propounded, and . . . in like manner translate the precise expressions of the [defendant]." Id. at 1095 (quoting People v. Cunningham, 546 N.W.2d 715, 716 (Mich. Ct. App. 1996) (quotation omitted)). This is so because the interpreter's role during a criminal proceeding is a critical one. "Language interpreters overcome the barriers and cultural misunderstandings that can render criminal defendants virtually absent from their own proceedings. Interpreters also eliminate the misinterpretation of witnesses' statements made to police or triers of fact during court proceedings." Lynn W. Davis, et al., The Changing Face of Justice: A Survey of Recent Cases Involving Courtroom Interpretation, 7 Harv. Latino L. Rev. 1, 3 (2004).

In this case, although the trial court's English language advisements were properly given, the record shows they were not accurately communicated to Ponce during the guilty plea hearing in Spanish—the language he understood. And the only evidence that Ponce understood the trial court's English advisements is Ponce's statement, "I understand it, and I speak it a little." Ex. G at 5. We simply cannot infer from this statement that Ponce understood an explanation given in a foreign language of his legal rights especially where the Spanish interpretation of the advisements was wholly inadequate.

Had the trial court uttered the words relayed to Ponce by the interpreter, we doubt that a court of review would hesitate to declare that Ponce had not been given his Boykin advisements.

8

Thus, we are of the view that an advisement from the mouth of the court-appointed interpreter instead of that of the trial judge to be a distinction without a difference. In sum, we conclude that Ponce has demonstrated that his 1999 guilty plea hearing was not conducted in accordance with the mandates of Boykin.

That is not to say, however, that Ponce is automatically entitled to post-conviction relief. "[O]nce a state prisoner has demonstrated that the plea taking was not conducted in accordance with Boykin, the state may, if it affirmatively proves in a post-conviction hearing that the plea was voluntary and intelligent, obviate the necessity of vacating the plea." Youngblood, 542 N.E.2d at 189 (quoting Todd v. Lockhart, 490 F.2d 626, 628 (8th Cir. 1974)). Stated somewhat differently, once the defendant demonstrates that the trial court did not advise him that he was waiving his Boykin rights by pleading guilty, the burden shifts to the State to prove that the petitioner nonetheless knew that he was waiving such rights. And where the record of the guilty plea hearing itself does not establish that a defendant was properly advised of and waived his rights, evidence outside of that record may be used to establish a defendant's understanding. See id. (affirming denial of post-conviction relief where no Boykin advisement was given at the plea hearing but trial counsel testified at the post-conviction hearing that they had explained these rights to defendant prior to the plea).

The record shows that prior to the 1999 guilty plea hearing Ponce had been presented with and signed two different plea agreements both of which were written in English and contained language advising Ponce of his Boykin rights. At the post-conviction hearing trial counsel testified that with the aid of a translator, he discussed these rights with Ponce. The translator who assisted trial counsel in explaining these agreements to Ponce did not testify at the post-conviction hearing; and trial counsel did not testify concerning what the translator said to Ponce in Spanish. In fact, trial counsel admitted that he had an insufficient knowledge of Spanish such that he was incapable of "determin[ing] whether or not concepts were being appropriately interpreted to [Ponce]." P.C.R. Tr. at 63. Rather, trial counsel explained that he believed Ponce to have understood his rights based on "his level of contentedness" after the translator's explanation "and not having any additional questions for [him]." P.C.R. Tr. at 63. The State insists that trial counsel's testimony is sufficient to show that Ponce had been advised

of his Boykin rights and understood that a guilty plea would result in a waiver. Br. of Appellee at 5, 7. We disagree. The foregoing testimony is not evidence establishing Ponce's understanding. Instead, it merely establishes that trial counsel employed a translator who relayed *something* to Ponce at the time counsel presented Ponce with the written plea agreements.

The State also implies that the record of the post-conviction hearing shows that Ponce understood the trial court's advisements because Ponce did not "inform the trial court [that] he did not understand the words the court used to describe his rights[.]" Br. of Appellee at 4. But the trial court's advisements were in English. Even though Ponce said he spoke and understood English "a little," "participation in court proceedings requires far more than a very basic level of communicative capability." Laura K. Abel, Language Access in the Federal Courts, 61 Drake L. Rev. 593, 622 (2013) (quoting Nat'l Ctr. for State Courts, Court Interpretation: Model Guides for Policy and Practice in the State Courts 125 (1995)). "Non-English speakers struggle merely to understand the words of court staff, lawyers, and judges, let alone the corresponding processes. Without a translator, a non-English speaker is left deaf without the aid of sign language." Shepard, supra, 643.

To the extent that the State's argument is premised on Ponce's statement that he understood the advisements through the interpreter we reiterate, "one may fully understand and even acknowledge to others an understanding of what is in actuality an inaccurate interpretation of the proceedings." Diaz, 934 N.E.2d at 1095. In our view this is precisely what occurred here. Ponce's declaration during the guilty plea hearing shows little more than an acknowledgement that he understood the interpreter's faulty advisements. This too is insufficient to show that Ponce knowingly and intelligently waived his rights. Thus, even considering the record as a whole, the State has not demonstrated that Ponce's legal rights were explained to him such that Ponce's 1999 guilty plea was knowingly and voluntarily given.

Ensuring meaningful access to justice requires that all litigants—including those with limited English proficiency—are equally given the opportunity to participate meaningfully throughout the legal proceedings. As Justice Frankfurter aptly declared long ago, "there is no greater inequality than the equal treatment of unequals." Dennis v. United States, 339 U.S. 162,

10

184 (1950) (Frankfurter, J., dissenting). To declare that a defendant with limited English proficiency who received an incorrect interpretation of the trial court's <u>Boykin</u> advisements should be equally culpable for his guilty plea as a defendant who is fluent in the English language and received an accurate and uninterrupted advisement directly from the trial court would work a great injustice not only on the LEP defendant, but on the integrity of our system as a whole.[9]

## Conclusion

In this case Ponce carried his initial burden of demonstrating that at the guilty plea hearing he was not properly advised of the constitutional rights he was waiving by pleading guilty. And the State failed to show that the record as a whole nonetheless demonstrated that Ponce understood his constitutional rights and waived them. Therefore, Ponce's plea of guilty must be vacated. We thus reverse the judgment of the post-conviction court and remand this cause for further proceedings.

Dickson, C.J., and David, Massa and Rush, JJ., concur.

---

[9] Indeed the observations of the United States Supreme Court over five decades ago concerning an accused's right to the assistance of counsel in all criminal prosecutions has resonance for the case before us today:

> From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the [LEP defendant] charged with crime has to face his accusers without a [competent interpreter] to assist him.

<u>Gideon v. Wainwright</u>, 372 U.S. 335, 344 (1963).

11