## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Mar 05 2015, 8:56 am
*Kevin S. Smith*
**CLERK**
of the supreme court, court of appeals and tax court

ATTORNEY FOR APPELLANT

Victoria L. Bailey
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kap Thang,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

March 5, 2015

Court of Appeals Cause No.
49A02-1406-CR-393

Appeal from the Marion Superior Court

Lower Court Cause No.
49G21-1310-FD-66727

The Honorable Gary Miller, Judge

**Pyle, Judge**

## Statement of the Case

[1] Kap Thang ("Thang") appeals the trial court's order revoking his community corrections placement. He argues that the trial court did not afford him due process during his hearing and that insufficient evidence supported the

revocation of his placement. Concluding that the trial court did not violate Thang's due process rights and that sufficient evidence supported revocation of his placement, we affirm the trial court's order.

We affirm.

## Issues

1. Whether the trial court violated Thang's due process rights during his hearing.

2. Whether sufficient evidence supported the trial court's order revoking Thang's community corrections placement.

## Facts

On October 10, 2013, the State charged Thang with Class D felony invasion of privacy. Thang pled guilty on February 3, 2014, and the trial court sentenced him to three (3) years executed with one year in the Department of Correction and two (2) years on home detention with global positioning system ("GPS") monitoring to keep him away from the victim.

After his release from the Department of Correction, Thang began his community corrections placement on April 10, 2014. Thang only speaks Burmese. Marion County Community Corrections ("MCCC") works with Burmese interpreters, and one was used throughout the entire intake process with Thang. Thang initialed and signed a seven-page contract detailing the conditions of his placement. Relevant to the alleged violations, Thang agreed to the following:

<u>MARION COUNTY COMMUNITY CORRECTIONS</u>

* * * *

2. If [I] leave [my] residence without permission from Home Detention and/or permission from Community Corrections and/or fail to return, I will be considered an Absconder and a violation with a warrant request will be sent to Court.

<u>MARION COUNTY COMMUNITY CORRECTIONS GPS PROGRAM</u>

* * * *

6. You will not enter, slow down, stop, or re-enter areas that are defined by your GPS unit to be off limits to you. If your GPS unit indicates that you are in an "exclusion area and to leave immediately[,]" you are in an exclusion area and must turn around and exit immediately. From that point forward, you must use an alternate route and not re-enter that area. Contact your CSM for further clarification. In some cases you will have to travel out of your way to avoid excluded areas. Clients will not be excused from entering exclusion zones due to entering the highway. They will be expected to find an alternate route.

(State's Ex. 1 at 5, 8).

[7] *On the same day*, MCCC received an alert that Thang entered the exclusionary zone. The GPS handling center placed a call to Thang's device, but he did not answer. MCCC then called Thang's reported phone number. Thang's pastor answered the phone, and MCCC requested that the pastor have Thang contact them. Thang was scheduled to be out of his residence from 1:30 p.m. until 5:30

p.m. MCCC received another alert that Thang had not returned to his residence by that time.

[8] MCCC filed a violation with the trial court on April 10, 2014, alleging that Thang entered the exclusionary zone and violated his curfew. The trial court issued a warrant for Thang's arrest, and he surrendered the next day. The trial court scheduled a violation hearing for May 14, 2014.

[9] At the hearing, MCCC court team member Katherine Shiba ("Shiba") testified that she was formally a case manager and was in charge of a caseload of clients speaking Burmese. She further stated that the MCCC's standard operating procedure with Burmese clients was to have interpreters read the MCCC contract line by line with clients and answer any questions. Thang admitted the violations but offered evidence in an effort to show that his intentions "were not sinister" and that the violations were due to a language barrier. (Tr. 35). The trial court found Thang in violation of his community corrections placement and ordered that he serve the remainder of his sentence in the Department of Correction. Thang now appeals.

## Decision

[10] Thang appeals the revocation of his community corrections placement. Specifically, Thang asserts that the trial court violated his due process rights because "the record is devoid of any evidence showing that the conditions of [his] community corrections placement were conveyed to him in a language he could understand." (Thang's Br. 3). In the alternative, he claims that the State

did not present substantial evidence showing "that Thang had actual notice of the conditions of his placement." (Thang's Br. 8).

1. Due Process

Our supreme court has held that "the due process requirements . . . for probation revocations are also required when the trial court revokes a defendant's placement in a community corrections program." *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999). "As a result, a defendant in a community corrections program is entitled to representation by counsel, written notice of the claimed violations, disclosure of the opposing evidence, an opportunity to be heard and present evidence, and the right to confront and cross-examine witnesses in a neutral hearing before the trial court." *Id*. at 550. Non-English-speaking defendants have "the right to have [their] proceeding simultaneously translated to allow for effective participation." *Martinez Chavez v. State*, 534 N.E.2d 731, 736 (Ind. 1989) (citing *United States ex rel. Negron v. State of New York*, 434 F.2d 386 (2d Cir. 1970)). Interpreters are necessary "to implement fundamental notions of due process such as the right to be present at trial, the right to confront one's accusers, and the right to counsel." *Id*. at 737.

Here, Thang does not allege that he failed to receive any of the previously mentioned rights. Indeed, the trial court conducted the hearing with an interpreter, and Thang was assisted by counsel. Thang also presented evidence, cross-examined the State's witness, and made no allegation that he failed to receive written notice of his violations or that evidence was withheld.

Nevertheless, Thang calls our attention to *Ponce v. State*, 9 N.E.3d 1265 (Ind. 2014) to support his argument that the trial court violated his due process rights.

[13]  In *Ponce*, our supreme court vacated Ponce's plea of guilty after he demonstrated a defective interpretation of the constitutional rights he waived during his hearing.  The Court found as follows:

> Courts have long recognized that a foreign language defendant's capacity to understand and appreciate the proceedings, to participate with his counsel, to confront his accusers, and to waive rights knowingly and intelligently, is undermined without an interpreter actively participating in his defense.  Undoubtedly, the defendant is denied due process when, among other things, what is told [to] him is incomprehensible [or] the accuracy and scope of a translation at a hearing or trial is subject to grave doubt.

*Id*. at 1272.  (internal citations and quotation marks omitted).

[14]  *Ponce* clearly deals with ensuring that the proceedings *at a hearing or trial* for foreign-language defendants are fair.  Thang challenges what MCCC told or did not tell him during his intake into community corrections.  This argument is more appropriate for a sufficiency of the evidence review rather than a violation of due process.  "*Due process* is far more than a term of art."  *Id*. at 1268. (emphasis in original).  "[T]he fundamental requirement of procedural due process is the opportunity to be heard at a meaningful time in a meaningful manner."  *Id.*  (quoting *Perdue v. Gargano*, 964 N.E.2d 825, 832 (Ind. 2012)).  The record reveals no errors in how the trial court conducted Thang's hearing.  Accordingly, the trial court did not deny Thang due process.

### 2. Sufficiency of the Evidence

[15] Thang argues that the State did not present substantial evidence that he had actual notice of the terms of his community correction placement. Specifically, he asserts that the testimony of MCCC representative Shiba regarding Thang's intake process was speculation because she was not present at the time.

[16] "For the purposes of appellate review, we treat a hearing on a petition to revoke a placement in a community corrections program the same as we do a hearing on a petition to revoke probation." *Cox*, 706 N.E.2d at 549. The decision to revoke probation or placement in a community corrections program is within the sole discretion of the trial court. *Woods v. State*, 892 N.E.2d 637, 639 (Ind. 2008). We will review that decision for an abuse of discretion. *Id*. We consider the evidence only most favorable to the judgment and do not reweigh the evidence or judge the credibility of witnesses. *Id*. We will affirm if there is substantial evidence of probative value to support the trial court's decision that the defendant violated the program's terms. *Id*. at 639-40.

[17] Here, Thang admitted that he violated the terms of his community corrections placement by entering the exclusionary zone and violating his curfew. Further, Thang initialed and signed a seven page contract and admitted that community corrections had explained the terms of his placement. Nevertheless, now on appeal, Thang claims he did not receive actual notice of the terms of his placement. He calls our attention to the transcript, where his attorney asked if MCCC told him that he had to be home by a certain time and Thang responded, "I don't know." (Tr. 27). Yet, when asked on cross examination

whether he knew that he was not supposed to enter the exclusionary zone, Thang answered, "She wasn't there." (Tr. 29). In other words, Thang offered a justification for being in the exclusionary zone. The trial court could infer from his justification that he knew not to be in the area and thus understood the terms of his placement. In addition, Thang's characterization of Shiba's testimony about MCCC's operating procedures is simply a request to reweigh the evidence, which we will not do. Given Thang's testimony, Shiba's testimony, and the signed paper work from community corrections, we conclude that Thang had actual knowledge of his conditions of placement. Substantial evidence supports the revocation of Thang's community corrections placement.

[18] Affirmed.

Barnes, J., and May, J., concur.