## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

John Pinnow
Deputy Public Defender

Anne C. Kaiser
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Brian Reitz
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Cesar Contreras-Munoz,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

November 6, 2015

Court of Appeals Case No.
20A03-1504-PC-127

Appeal from the Elkhart Circuit Court

The Honorable Terry C. Shewmaker, Judge

Trial Court Cause No.
20C01-1110-PC-24

**Najam, Judge.**

# Statement of the Case

Cesar Contreras-Munoz appeals the post-conviction court's denial of his petition for post-conviction relief. Contreras-Munoz raises two issues for our review, which we restate as follows:

1. Whether he entered into his guilty plea knowingly, intelligently, and voluntarily, or whether he received ineffective assistance from his trial counsel, when he did not have an English-Spanish interpreter present during his guilty-plea hearing or other court proceedings.

2. Whether he received ineffective assistance from his trial counsel when counsel did not call two witnesses on Contreras-Munoz's behalf during the sentencing hearing.

We affirm.

# Facts and Procedural History

On November 26, 2007, the State charged Contreras-Munoz with possession of cocaine, as a Class A felony, and with a criminal gang enhancement. Thereafter, Contreras-Munoz hired David W. Newman, Jr. as counsel. Newman "every day represent[s] someone who speaks Spanish." Tr. at 27. Although Newman does not speak Spanish, his secretary does. If Newman has any trouble communicating with a client, he brings his secretary in to translate.

When he met Contreras-Munoz, Newman "didn't notice any trouble" with communicating in English "at all." *Id.* at 20. Indeed, Newman not only observed that Contreras-Munoz had "no difficulty" in speaking and

understanding English, Newman observed that Contreras-Munoz was "conversational" in English. *Id.* at 20-21. Contreras-Munoz and Newman "had conversations" in English "throughout" Newman's representation of him. *Id.* at 28. Newman found Contreras-Munoz to be "a very likeable fellow in the discussions, polite, funny." *Id.* Contreras-Munoz's responses to Newman were "appropriate based on the questions and the context." *Id.* During his representation of Contreras-Munoz, Newman wrote him nine letters, each in English. Contreras-Munoz also wrote letters to Newman in English. At no time did Contreras-Munoz indicate to Newman that Contreras-Munoz did not understand English, and at no time did Contreras-Munoz request that Newman obtain a translator.

[5] On January 24, 2008, the court held a bond reduction hearing for Contreras-Munoz. Contreras-Munoz appeared at that hearing with Newman. "At no point during these proceedings did [Contreras-Munoz] appear to have difficulty communicating in English," and Contreras-Munoz did not request an interpreter. Appellant's App. at 283. The court ordered Contreras-Munoz's bond reduced.

[6] On May 22, 2008, the court held a status hearing, at which Contreras-Munoz appeared with Newman. At that hearing, Contreras-Munoz "acknowledged his trial date . . . in English and . . . did not request an interpreter or demonstrate any difficulty understanding the proceedings." *Id.* The court held another status hearing just over one year later. Again, Contreras-Munoz appeared with Newman and "acknowledged his trial date . . . in English." *Id.* at 284.

Contreras-Munoz "made no request for an interpreter" at that time. *Id.* A third status hearing occurred four months after the second. Contreras-Munoz appeared with Newman and again did not request an interpreter.

[7] In November of 2009, Newman negotiated a plea agreement with the State on Contreras-Munoz's behalf. The plea agreement was reduced to writing and in English. Newman went over the terms of the written plea agreement with Contreras-Munoz "on multiple occasions." Tr. at 12. Contreras-Munoz signed the plea agreement, pleading guilty to possession of cocaine, as a Class A felony. In exchange, the State agreed to dismiss the criminal gang enhancement.

[8] The court held a plea hearing on November 12, 2009. The court had an English-Spanish interpreter present at that hearing, but neither Contreras-Munoz nor Newman requested her services. Instead, the court engaged Contreras-Munoz in English as follows:

> THE COURT: Tell me your name.
>
> MR. CONTRERAS-MUNOZ: Cesar Contreras-Munoz.
>
> * * *
>
> THE COURT: All right. We have a plea agreement. Mr. [Contreras-]Munoz, have you reviewed it?
>
> MR. CONTRERAS-MUNOZ: Yes.
>
> THE COURT: And did you sign it?

MR. CONTRERAS-MUNOZ: Yes.

THE COURT: The Plea Agreement says you're going to plead guilty to Count I, Dealing in Cocaine, a Class A Felony. Is that correct?

MR. CONTRERAS-MUNOZ: Yes.

THE COURT: And on Count I, whatever sentence is imposed will be up to the Court's discretion, is that correct?

MR. CONTRERAS-MUNOZ: Yes.

THE COURT: The other Count, Criminal Gang Activity, will be dismissed, the enhancement, and the State consents to jurisdiction for a modification from January 1, 2012, after that date. The State doesn't agree to a modification[] but only grants to give the Court jurisdiction. The modification must be filed in calendar year 2012.

MR. CONTRERAS-MUNOZ: Yes.

THE COURT: Is there any other term of this . . . agreement of which I'm unaware?

MR. CONTRERAS-MUNOZ: No.

THE COURT: Did I describe it correctly?

MR. CONTRERAS-MUNOZ: Yes.

THE COURT: . . . All right, Mr. Contreras-Munoz, are you telling me you committed the offense, the Class A felony, as alleged on page one?

MR. CONTRERAS-MUNOZ: Yes.

THE COURT:  Are you telling me on November 19, 2007, in Elkhart County, Indiana, you knowingly possessed cocaine with the intent to deliver the cocaine?

MR. CONTRERAS-MUNOZ:  Yes.

THE COURT:  And the amount of the cocaine was three grams or more, is that correct?

MR. CONTRERAS-MUNOZ:  Yes.

* * *

THE COURT:  Mr. Contreras-Munoz, before I can accept your plea of guilty, I must be satisfied that you fully understand your constitutional rights; that your plea of guilty is made freely and voluntarily; and, that you are, in fact, guilty.

It will, therefore, be necessary that I ask you certain questions and, perhaps, hear some evidence.  If you do not understand the questions or words that I use, please let me know.  I will explain them to you.

You may talk with your attorney about any matter during questioning and prior to answering any questions.

First of all, do you read, write[,] and understand the English language?

MR. CONTRERAS-MUNOZ:  Yes.

THE COURT:  Have you ever been treated for any mental illness, or[,] to your knowledge, do [you] now suffer from any mental or emotional disability?

MR. CONTRERAS-MUNOZ:  No.

THE COURT:  Are you now under the influence of alcohol or any drugs that would affect your ability to understand these proceedings?

MR. CONTRERAS-MUNOZ: No.

THE COURT: Mr. Contreras-Munoz, your attorney[ ha]s informed the Court that you want to withdraw your former plea of not guilty and enter a plea of guilty to page one of the charge, the Class A Felony. Is that what you want to do?

MR. CONTRERAS-MUNOZ: Yes.

THE COURT: You and I have reviewed your plea agreement, correct?

MR. CONTRERAS-MUNOZ: Yes.

THE COURT: Do you have any questions about it?

MR. CONTRERAS-MUNOZ: No.

Appellant's App. at 300-04. The court then advised Contreras-Munoz of his rights. With each advisement, the court asked Contreras-Munoz if he understood the right described. Contreras-Munoz repeatedly acknowledged that he understood. The court then again reviewed the terms of Contreras-Munoz's plea agreement as well as the State's charging information and relevant statutes, each of which, again, Contreras-Munoz stated he understood. And the court thoroughly described the sentencing process. At each point, Contreras-Munoz affirmed that he understood the court's description. When asked fact-specific questions that required either a yes or no answer, Contreras-Munoz answered appropriately as the facts required. *E.g.*, *id.* at 310 ("THE COURT: Are you now on parole? MR. CONTRERAS-MUNOZ: No.").

The court then accepted Contreras-Munoz's guilty plea and entered judgment of conviction accordingly. Thereafter, the court sentenced Contreras-Munoz to thirty-seven years in the Department of Correction.

[9] On August 12, 2010, Contreras-Munoz filed a hand-written request, in English, with the trial court in which Contreras-Munoz requested "all information" pertaining to his case. *Id.* at 91. Around that same time, Contreras-Munoz sent a request to Newman, partly hand-written and partly typed, in English, in which Contreras-Munoz requested his "entire client file" in anticipation of a "petition for post-conviction relief." State's Ex. 4.

[10] On August 23, 2010, Contreras-Munoz filed a pro se motion for modification of sentence. This motion was partly hand-written and partly typed, all in English. Over eight consecutive paragraphs, Contreras-Munoz hand wrote his explanations for why his sentence should be modified. The court denied Contreras-Munoz's motion the same day.

[11] On February 14, 2011, Contreras-Munoz filed a pro se petition for direct placement into community corrections. This motion was partly hand-written and partly typed, all in English, and included a lengthy, hand-written letter from Contreras-Munoz to the trial court explaining the basis for the petition. The court denied the petition the following day.

[12] On May 24, 2011, Contreras-Munoz sent a letter to the Clerk of Elkhart Circuit Court. This letter was hand-written and in English. Contreras-Munoz requested case-file documents potentially relevant to "a Post-Conviction Relief

Petition." *Id.* at 104. Contreras-Munoz sent two additional such letters to the trial court clerk on July 15 and July 25.

[13] On September 14, 2011, Contreras-Munoz, pro se, filed a petition for leave to file a belated notice of appeal. The petition was entirely in English. The court set a hearing date on Contreras-Munoz's petition; Contreras-Munoz, in English, requested an interpreter for this hearing, and the court granted Contreras-Munoz's request. At the hearing, however, Contreras-Munoz withdrew his petition for a belated notice of appeal.

[14] On October 20, 2011, Contreras-Munoz, pro se, filed his initial petition for post-conviction relief, which was typed in English. Contreras-Munoz's original grounds for post-conviction relief were based on Newman's alleged "fail[ure] to investigate the facts and circumstances of the case" and on the theory that Contreras-Munoz's "guilty plea was coerced by threats, false promises, and counsel's lack of effort on behalf of the petitioner." *Id.* at 121-22. Thereafter, Contreras-Munoz filed numerous documents with the court that were hand-written and in English. Contreras-Munoz eventually moved to withdraw his petition for post-conviction relief without prejudice, which the court permitted.

[15] On December 2, 2013, Contreras-Munoz, pro se, filed a new petition for post-conviction relief, which was typed in English. On February 6, 2014, counsel filed an appearance on Contreras-Munoz's behalf, and, on September 18, 2014, Contreras-Munoz, through counsel, filed an amended petition for post-conviction relief. For the first time in his amended petition, Contreras-Munoz

asserted that he did not understand the English language and, as such, he did not knowingly, intelligently, and voluntarily enter into his guilty plea. For the same reason, Contreras-Munoz alleged that his trial counsel rendered ineffective assistance. Contreras-Munoz further alleged Newman to be ineffective in his presentation of potential mitigating evidence at Contreras-Munoz's sentencing hearing.

[16] The post-conviction court held a hearing on Contreras-Munoz's amended petition for post-conviction relief on November 20, 2014. Thereafter, the court entered findings of fact and conclusions of law denying the petition. In particular, the post-conviction court noted that John Ford, Contreras-Munoz's employer, testified that Contreras-Munoz had "interpreted English to [other] Spanish speaking employees" at his place of employment. And the court found that it "had no reason to believe [Contreras-Munoz] did not understand English as [he] communicated in English and indicated an understanding of all court proceedings," and Contreras-Munoz "understood English." *Id.* at 294-95, 298. The court then concluded that Contreras-Munoz had knowingly, intelligently, and voluntarily entered into his guilty plea. The court further concluded that Contreras-Munoz did not receive ineffective assistance from his trial counsel. This appeal ensued.

# Discussion and Decision

## *Standard of Review*

[17]     Contreras-Munoz appeals the post-conviction court's denial of his petition for post-conviction relief.  As our supreme court has explained:

> "The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence."  *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004).  "When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment."  *Id.*  To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court.  *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993).  Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6).  Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made."  *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (quotation omitted).

*Hollowell v. State*, 19 N.E.3d 263, 268-69 (Ind. 2014) (alteration original to *Hollowell*).  Because the clearly erroneous standard "is a review for sufficiency of evidence, we neither reweigh the evidence nor determine the credibility of witnesses."  *Ben-Yisrayl*, 738 N.E.2d at 258-59.  Rather, we "consider only the evidence that supports that judgment and the reasonable inferences to be drawn from that evidence."  *Id.*

[18] On appeal, Contreras-Munoz asserts that he did not knowingly, intelligently, or voluntarily plead guilty because "he did not have an interpreter at the guilty plea hearing." Appellant's Br. at 9. Contreras-Munoz also asserts that Newman rendered ineffective assistance when he did not request an interpreter be present during court proceedings. And Contreras-Munoz asserts that Newman rendered ineffective assistance when he did not present certain evidence during Contreras-Munoz's sentencing hearing. We address the English-language issues first and the sentencing-hearing issue second.

### Issue One: Contreras-Munoz's Understanding of English

[19] Contreras-Munoz first asserts that he did not enter into his guilty plea knowingly, intelligently, or voluntarily because he did not have an interpreter present at the guilty-plea hearing. As our supreme court has explained:

> As we have previously declared: "In considering the voluntariness of a guilty plea we start with the standard that the record of the guilty plea proceeding must demonstrate that the defendant was advised of his constitutional rights and knowingly and voluntarily waived them." *Turman v. State*, 271 Ind. 332, 392 N.E.2d 483, 484 (1979) (citing *Boykin [v. Alabama]*, 395 U.S. [238, 242 (1969)]). And *Boykin* requires that a trial court accepting a guilty plea "must be satisfied that an accused is aware of his right against self-incrimination, his right to trial by jury, and his right to confront his accusers." *Dewitt v. State*, 755 N.E.2d 167, 171 (Ind. 2001) (citing *Boykin*, 395 U.S. at 243). The failure to advise a criminal defendant of his constitutional rights in accordance with *Boykin* prior to accepting a guilty plea will result in reversal of the conviction. *Youngblood v. State*, 542 N.E.2d 188, 188 (Ind. 1989) (quoting *White v. State*, 497 N.E.2d 893, 905 (Ind. 1986)). Accordingly, a defendant who demonstrates that the trial court

failed to properly give a *Boykin* advisement during the guilty plea hearing has met his threshold burden for obtaining post-conviction relief.

\* \* \*

Courts have long recognized that "a foreign language defendant's capacity to understand and appreciate the proceedings, to participate with his counsel, to confront his accusers, and to waive rights knowingly and intelligently, is undermined without an interpreter actively participating in his defense." *United States v. Cirrincione*, 780 F.2d 620, 633 (7th Cir. 1985) (citing *United States ex rel. Negron v. New York*, 434 F.2d 386, 389 (2d Cir. 1970)). Undoubtedly, the defendant is denied due process when, among other things, "what is told him is incomprehensible [or] the accuracy and scope of a translation at a hearing or trial is subject to grave doubt [.]" *Cirrincione*, 780 F.2d at 634. For this reason we have declared that a "defendant who cannot speak or understand English has [the] right to have his proceedings simultaneously translated to allow for effective participation." *Diaz*, 934 N.E.2d at 1095 (alteration in original) (quoting *Martinez Chavez v. State*, 534 N.E.2d 731, 736 (Ind. 1989) (citation omitted)). We elaborated that such interpretation must include "the precise form and tenor of each question propounded, and . . . in like manner translate the precise expressions of the [defendant]." *Id.* at 1095 (quoting *People v. Cunningham*, 215 Mich. App. 652, 546 N.W.2d 715, 716 (1996) (quotation omitted)). This is so because the interpreter's role during a criminal proceeding is a critical one. "Language interpreters overcome the barriers and cultural misunderstandings that can render criminal defendants virtually absent from their own proceedings. Interpreters also eliminate the misinterpretation of witnesses' statements made to police or triers of fact during court proceedings." Lynn W. Davis, et al., The Changing Face of Justice: A Survey of Recent Cases Involving Courtroom Interpretation, 7 Harv. Latino L. Rev. 1, 3 (2004).

*Ponce v. State*, 9 N.E.3d 1265, 1270, 1272 (Ind. 2014) (footnote omitted; alterations and some omissions original).

[20] In *Ponce*, our supreme court held that a post-conviction petitioner had met his burden on appeal to show that he did not enter into his guilty plea knowingly, intelligently, and voluntarily. In particular, in that case the petitioner demonstrated that his *Boykin* advisements "were not accurately communicated to [him] . . . in Spanish—the language he understood." *Id.* at 1273. Moreover, the only evidence that the petitioner in *Ponce* understood the English-language version of his advisements was his statement, "I understand it, and I speak it a little." *Id.* As our supreme court held, this statement, standing alone, did not show that the petitioner would understand "an explanation given in a foreign language of his legal rights." *Id.* And the court concluded that the State failed to show that the record as a whole demonstrated that the petitioner understood his constitutional rights and waived them. *Id.* at 1274.

[21] Contreras-Munoz's case is readily distinguishable from *Ponce*. Viewing the evidence most favorable to the post-conviction court's judgment, as we must, *see Ben-Yisrayl*, 738 N.E.2d at 258-59, we cannot say that the evidence leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court, *see Hollowell*, 19 N.E.3d at 269. Indeed, here the trial court expressly found that Contreras-Munoz understood the English language. That finding is well-supported by the evidence. Specifically, over the course of about six years, Contreras-Munoz wrote—sometimes by hand—numerous letters and documents to Newman and the court, all of which were in English. Some of

those documents made specific references to legal proceedings; others made specific legal arguments with citations to authority. Further, Newman testified that he frequently engages with Spanish-speaking clients and has an interpreter on staff. But he had no problem communicating with Contreras-Munoz in English at any point, either orally or in writing, and, as such, Newman did not see the need to utilize his Spanish-speaking employee when communicating with Contreras-Munoz. And the trial court engaged Contreras-Munoz in numerous proceedings up to, during, and after Contreras-Munoz's guilty plea. Contreras-Munoz had no problems communicating with the court in English when the court engaged him.

[22] Contreras-Munoz asserts on appeal that his responses to the trial court during the various proceedings are not indicative of his understanding of the English language because he merely gave "yes" or "no" answers. But the trial court's questions were often fact-specific—to give a correct yes or no answer required an understanding of the question's factual reference. For example, during the guilty plea hearing, the trial court asked Contreras-Munoz if he was on parole or probation. Contreras-Munoz answered "[n]o" to both questions. Appellant's App. at 310. Contreras-Munoz does not explain on appeal how he could correctly answer "yes" to some fact-specific questions and "no" to others without first understanding the facts referenced in the question.

[23] In any event, Contreras-Munoz's argument on appeal amounts to a request for this court to reweigh the evidence before the post-conviction court. That is, Contreras-Munoz's appeal is premised on the evidence he presented to the post-

conviction court rather than the evidence most favorable to the court's judgment, which is contrary to our standard of review. Thus, we decline Contreras-Munoz's invitation to reassess the evidence on appeal.

[24] We hold that the post-conviction court's judgment that Contreras-Munoz entered into his guilty plea knowingly, voluntarily, and intelligently is not clearly erroneous. For the same reasons Contreras-Munoz cannot demonstrate that the post-conviction court erred on this issue, he cannot demonstrate that the post-conviction court erred when it concluded that Newman had not rendered ineffective assistance of counsel when he failed to secure an interpreter during any of the proceedings before the trial court. Accordingly, we affirm the post-conviction court's judgment on these issues.

### Issue Two: Sentencing Hearing

[25] Contreras-Munoz also argues on appeal that Newman rendered ineffective assistance of counsel when he failed to present certain evidence on Contreras-Munoz's behalf during the sentencing hearing. When evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Hollowell*, 19 N.E.3d at 269. To satisfy the first prong, "the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (citing *Strickland*, 466 U.S. at 687-88). To satisfy the second prong, "the defendant must show prejudice: a reasonable probability (i.e. a probability

sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694).

[26] Here, Contreras-Munoz asserts that Newman rendered ineffective assistance at the sentencing hearing when he did not call Ford, Contreras-Munoz's employer, and Amy Contreras, Contreras-Munoz's former wife, as witnesses on Contreras-Munoz's behalf. According to Contreras-Munoz, Ford would have testified that Contreras-Munoz had worked for Ford for eight years and was a trusted worker with supervisor authority. And Contreras-Munoz asserts that Amy would have testified that Contreras-Munoz supported his family.

[27] But the Indiana Supreme Court has stated that "which witnesses to call is the epitome of a strategic decision" that "we will not second-guess." *Wrinkles v. State*, 749 N.E.2d 1179, 1200 (Ind. 2001) (citations and quotation marks omitted). Accordingly, Contreras-Munoz cannot demonstrate that Newman's strategic decision to not call Ford and Amy as witnesses was objectively unreasonable.

[28] Moreover, the post-conviction court concluded that there was not a reasonable probability that the result of Contreras-Munoz's sentence would have been different had Newman called Ford and Amy as witnesses. Indeed, while Newman did not call these potential witnesses, he did ask the trial court

> to note [Contreras-Munoz's] strong family support. His ex-wife and his children have written letters. He has four children. He was current on child support until he was incarcerated . . . . He

had a good work history before his arrest, and he was . . . in a supervisory position.

Appellant's App. at 319. Thus, while Ford and Amy might have bolstered Newman's assertions, nonetheless the trial court at the sentencing hearing had the information regarding Contreras-Munoz's family support and work history before it. And, despite having that information before it, the court still concluded that the aggravating factors overcame the proffered mitigators. We cannot say that the post-conviction court's conclusion that Contreras-Munoz would not have received a different sentence had Newman called Ford and Amy as witnesses is clearly erroneous. As such, we affirm the post-conviction court's denial of Contreras-Munoz's petition for post-conviction relief.

[29] Affirmed.

Kirsch, J., and Barnes, J., concur.