## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 18 2018, 10:35 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Victoria Christ
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mark A. Petry,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent.* | June 18, 2018<br><br>Court of Appeals Case No.<br>18A-PC-18<br><br>Appeal from the<br>Pike Circuit Court<br><br>The Honorable<br>Jeffrey L. Biesterveld, Judge<br><br>Trial Court Cause No.<br>63C01-1409-PC-216 |

**Kirsch, Judge.**

[1] Following a jury trial, Mark A. Petry ("Petry") was convicted of Class B felony criminal deviate conduct, Class D felony sexual battery, and Class D felony

criminal confinement. Petry admitted to being an habitual offender, and the trial court sentenced him. After this court affirmed Petry's convictions on direct appeal, Petry filed a petition for post-conviction relief, asserting that his plea of guilty to the habitual offender allegation was not knowing, intelligent, and voluntary. The post-conviction court denied his petition, and he now appeals, raising the following restated issue: whether the post-conviction court erred when it determined that Petry failed to show, by a preponderance of the evidence, that he did not know he was waiving his *Boykin* rights when he pleaded guilty to the habitual offender enhancement.

[2] We affirm.

## Facts and Procedural History

[3] The facts supporting Petry's convictions, as set forth more fully by this court on direct appeal, are that Petry sexually molested his teenage daughter more than twenty times over the course of two years. *Petry v. State*, No. 63A01-1306-CR-279, 2014 WL 729901, slip. op. at *1 (Ind. Ct. App. Feb. 25, 2014), *trans. denied*. Among other things, he touched his penis to her vagina, used bungee cords to tie her to the bed, duct-taped her hands behind her back, put his tongue on her vagina, and forced her to perform oral sex. A bifurcated jury trial was held, and at the end of the first phase, Petry was found guilty of Class B felony criminal deviate conduct, Class D felony sexual battery, and Class D felony criminal confinement. *Id.* at *3.

[4] The trial court recessed the jury, entered judgment of conviction, and moved to the habitual offender phase of the trial. Petry's counsel told the trial court that Petry "intends to waive jury trial on that issue and will admit to the habitual charge." *Appellant's App. Vol. II* at 64; *Trial Tr. Vol. III* at 531. Petry, still under oath, presented testimony to the trial court, regarding his decision to waive his right to a jury trial to determine habitual offender status:

> Q: Mr. Petry, you understand that you've been charged as an habitual offender?
>
> A: Yes. I have.
>
> Q: And that there are, because of prior felony convictions that you have received. You understand that?
>
> A: Yes.
>
> Q: And that the uh, you have the right to have this jury sit in judgment on whether or not you did, in fact, commit those offenses.
>
> A: Yes.
>
> Q: You understand that?
>
> A: Yes.
>
> Q: And you understand the seriousness of, of the habitual status, as far as the enhancement and the penalties?

A: Yes.

Q: Alright. And knowing all that, do you wish to waive your right to have a jury determine those, the issue of your habitual status?

A: Yes.

Q: Alright. And you, you feel like you fully understand what you are doing here, in admitting to this?

A: Yes.

Q: Alright. You understand that that does not affect your right to appeal the verdict on the other...

A: Yes.

Q: . . . counts? You understand that? Okay. You, is that, is this decision your free will?

A: Yes.

Q: Anybody threaten you or force you to do this?

A: No.

Q: Okay.

*Appellant's App. Vol. II* at 65-66. Next, the trial court asked Petry questions, confirming that Petry knew and understood the enhancement penalties that he

faced and that he had received adequate time to discuss it with his attorney. The prosecutor then established the factual basis for Petry's guilty plea, asking Petry if he had the following convictions: (1) 2005 Class C felony burglary in Daviess County; (2) 2000 Class C felony burglary in Dubois County; and (3) 1996 Class B felony arson in Knox County. Petry admitted to having the convictions, and the exhibits establishing these convictions were admitted into evidence. *Appellant's App. Vol. II* at 69-71; *State's Trial Exs.* 6, 7, 8. Petry had pleaded guilty to each. *State's Trial Exs.* 6, 7, 8.

[5]  The trial court then asked Petry's counsel if he had "a motion in regard to your client's former denial, not guilty plea as to the habitual offender count," and Petry's counsel withdrew the not guilty plea. *Appellant's App. Vol. II* at 72. The trial court asked Petry "how do you plead to the habitual offender charge" and Petry replied, "guilty." *Id*. The Court found, "[T]he defendant understands the nature of the charge to which he's pleading guilty, that he understands the possible penalty for the offense, that his plea was freely and voluntarily made, and that a factual basis exists for the plea." *Id*. The trial court concluded by stating, "[T]he Court will find that the defendant is an habitual offender pursuant to his plea," and it dismissed the jury, ordered a presentence report, and scheduled a sentencing hearing. *Id*.

[6]  The trial court later sentenced Petry to twenty years for criminal deviate conduct, three years for sexual battery, and three years for criminal confinement, all to run concurrently. The sentence was then enhanced twenty-

five years for the habitual offender status, for an aggregate sentence of forty-five years.[1]

[7] Petry filed a direct appeal, claiming that the trial court should not have admitted certain evidence and that the State presented insufficient evidence to convict him, and this court affirmed Petry's convictions. *Petry*, at \*6. In September 2014, Petry filed a pro se petition for post-conviction relief, later amended in July 2017, when Petry was represented by a public defender, alleging that his decision to admit to the habitual offender enhancement was not knowing, intelligent, and voluntary because the trial court failed to advise him of two constitutional rights: the privilege against self-incrimination and the right to confront and cross-examine witnesses. *Appellant's App. Vol. II* at 26-27.

[8] At the September 29, 2017 evidentiary hearing, Petry did not testify, but he submitted the record, which consisted of the trial transcript, trial exhibits, appellate briefs and appendices. *Pet'r's Ex.* 1. The State did not present evidence, but, in argument, conceded that the trial court did not advise Petry of the two specific rights at the habitual phase, arguing that those advisements

---

[1] We note that an habitual offender enhancement must be attached to a single conviction. *State v. Arnold*, 27 N.E.3d 315, 321 (Ind. Ct. App. 2015) (citing Ind. Code § 35-50-2-8), *trans. denied*. Here, we note that the Sentencing Order reflects that the habitual offender enhancement "be served consecutive to Counts I, II, and III." *Appellant's App. Vol. 2 Prior Appeal* at 54 (also marked as p. 296). To the extent that Petry's enhancement was attached to more than one conviction, that was improper. *Arnold*, 27 N.E.3d at 317 n.1 (noting that "[a]ttaching habitual offender enhancement to all three convictions was improper").

were given to Petry at his initial hearing, and he was represented by counsel throughout the proceedings. *PCR Tr.* at 6.

[9] After the parties submitted proposed findings, the post-conviction court issued findings of fact and conclusions of law ("Order"). In denying Petry's request for relief, the post-conviction court determined that "there is no evidence that Petry was unaware of his *Boykin* rights." *Appellant's App. Vol. II* at 56. In reaching its decision, the post-conviction court acknowledged that although Petry "was not formally advised prior to his plea of guilty to the Habitual Offender enhancement" of his rights against self-incrimination and the right to confront and cross examine witnesses, he "was advised by the Court" of those rights at his initial hearing on January 24, 2012, he was represented by counsel, and he "was present during the entire three day jury trial while his *Boykin* rights were on full display." *Id*. at 55-56.

[10] Petry now appeals, asking us to reverse the post-conviction court and vacate his habitual offender enhancement.

## Discussion and Decision

[11] Petry argues that his habitual offender guilty plea[2] was not knowing, voluntary and intelligent because, prior to his plea, he was not advised that he was

---

[2] We note that our Supreme Court has determined that pleading guilty to the habitual offender adjudication is distinguishable from stipulating to the enhancement. *See Hopkins v. State*, 889 N.E.2d 314, 316-17 (Ind. 2008) (holding that record indicated that defendant stipulated to being an habitual offender, but did not plead guilty, and the stipulation was not subject to attack as being involuntary for lack of *Boykin* rights). Pleading guilty to an habitual offender enhancement is also distinguishable from admitting only to the factual basis

waiving (1) his right to confront and cross-examine the witnesses and (2) the privilege against self-incrimination. He maintains that the post-conviction court's conclusion that, when he pleaded guilty, he was aware of these rights and understood he was waiving them was not supported by the evidence.

[12] "A post-conviction petitioner bears the burden of establishing his claims by a preponderance of the evidence." *Donnegan v. State*, 889 N.E.2d 886, 891 (Ind. Ct. App. 2008) (citing Ind. Post-Conviction Rule 1(5)), *trans. denied*. When a petitioner appeals a denial of post-conviction relief, he appeals a negative judgment. *Fisher v. State*, 878 N.E.2d 457, 463 (Ind. Ct. App. 2007), *trans. denied*. The petitioner must establish that the evidence as a whole unmistakably and unerringly leads to a conclusion contrary to that of the post-conviction court. *Id*. We will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion. *Wright v. State*, 881 N.E.2d 1018, 1022 (Ind. Ct. App. 2008), *trans. denied*.

---

underlying felonies. *See Garrett v. State*, 737 N.E.2d 388, 392 (Ind. 2000) (holding that it was not a guilty plea where defendant stipulated to the existence of prior offenses but the habitual allegation was still sent to the jury, and the stipulation did not require trial court to advise defendant of rights he would waive by pleading guilty). However, if the defendant, personally or through his attorney, goes beyond merely stipulating to the underlying convictions and also expressly admits to the habitual offender enhancement, such an admission is considered a guilty plea. *See Vanzandt v. State,* 730 N.E.2d 721, 726 (Ind. Ct. App. 2000). A defendant may challenge a guilty plea only in a petition for post-conviction relief. *Id*.; *see also Saylor v. State*, 55 N.E.3d 354, 365 n.10 (Ind. Ct. App. 2016), *trans. denied*. Here, where Petry stated that he was pleading "guilty" to the habitual allegation, and the parties' appellate arguments are based on the premise that Petry pleaded guilty, we proceed to address Petry's claim on that basis that he did, in fact, plead guilty to the enhancement.

[13] Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we cannot affirm the judgment on any legal basis, but rather, must determine if the court's findings are sufficient to support its judgment. *Manzano v. State*, 12 N.E.3d 321, 325 (Ind. Ct. App. 2014), *trans. denied*, *cert. denied*, 135 S. Ct. 2376 (2015). Although we do not defer to the post-conviction court's legal conclusions, we review the post-conviction court's factual findings under a clearly erroneous standard. *Id.* Accordingly, we will not reweigh the evidence or judge the credibility of witnesses, and we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. *Id.*

[14] In *Boykin v. Alabama,* 395 U.S. 238, 242(1969), the United States Supreme Court held that it was reversible error for the trial court to accept a guilty plea without an affirmative showing that it was intelligent and voluntary. "More particularly, *Boykin* requires that the record must show, or there must be an allegation and evidence which show, that the defendant was informed of, and waived, three specific federal constitutional rights: the privilege against compulsory self-incrimination, right to trial by jury, and the right to confront one's accusers." *Hall v. State*, 849 N.E.2d 466, 469 (Ind. 2006); *see also* Ind. Code § 35-35-1-2 (noting that the trial court shall not accept a plea of guilty without first determining that the defendant has been informed that he is waiving certain rights).

In this case, Petry argues that his habitual offender enhancement must be vacated because "[d]uring the guilty plea colloquy, the judge didn't mention the right to confront and cross-examine and the privilege against self-incrimination Petry would waive by pleading guilty." *Appellant's Br*. at 13. In support of his position, Petry relies on *Ponce v. State*, 9 N.E.3d 1265 (Ind. 2014), where the defendant, who was a non-native English speaker, pleaded guilty to one count of Class A felony delivery of cocaine. At his guilty plea hearing, he requested and received an interpreter. The trial court, through the interpreter, advised Ponce of his *Boykin* rights, and Ponce thereafter pleaded guilty. Ten years later, Ponce filed a pro se petition for post-conviction relief, later amended by counsel, alleging that Ponce's plea was not entered knowingly, intelligently, and voluntarily because the court-appointed interpreter failed to translate accurately Ponce's *Boykin* rights. Our Supreme Court agreed and reversed the post-conviction court's denial of Ponce's petition. *Id*. at 1274.

In its decision, the *Ponce* court determined that the trial court's advisements were properly given in English, but that the advisements were not accurately communicated to Ponce in Spanish during the guilty plea hearing and that "[w]e simply cannot infer . . . that Ponce understood an explanation given in a foreign language of his legal rights especially where the Spanish interpretation of the advisements was wholly inadequate." *Id*. at 1272. Our Supreme Court continued:

> That is not to say, however, that Ponce is automatically entitled to post-conviction relief. [O]nce a state prisoner has

demonstrated that the plea taking was not conducted in accordance with *Boykin*, the [S]tate may, if it affirmatively proves in a post-conviction hearing that the plea was voluntary and intelligent, obviate the necessity of vacating the plea. Stated somewhat differently, once the defendant demonstrates that the trial court did not advise him that he was waiving his *Boykin* rights by pleading guilty, the burden shifts to the State to prove that the petitioner nonetheless knew that he was waiving such rights. And where the record of the guilty plea hearing itself does not establish that a defendant was properly advised of and waived his rights, evidence outside of that record may be used to establish a defendant's understanding.

*Id*. at 1272-73 (internal citations and quotation marks omitted). Ponce's trial counsel testified at the post-conviction hearing that he, with the aid of the translator, discussed the *Boykin* rights with Ponce, and counsel believed that Ponce understood based on Ponce's "level of contentedness" and because Ponce did not ask additional questions. *Id*. at 1273. The translator did not testify at the post-conviction hearing. The *Ponce* Court determined that Ponce "carried his initial burden of demonstrating that at the guilty plea hearing he was not properly advised of the constitutional rights he was waiving[,]" but that "the State failed to show that the record as a whole nonetheless demonstrated that Ponce understood his constitutional rights and waived them." *Id*. at 1274.

[17]  Here, Petry argues on appeal that he met his threshold burden under *Ponce*, and that the burden then shifted to the State to prove that Petry understood the *Boykin* rights that he waived by pleading guilty. *Appellant's Br*. at 13. He maintains that the State did not present any evidence and failed to affirmatively

prove Petry was aware he was waiving the two *Boykin* rights by his guilty plea, and, therefore, his habitual offender plea must be vacated.

[18] We agree with Petry that, before accepting Petry's plea of guilty, the trial court did not advise him that he was waiving his right to confront and cross-examine witnesses and his right against self-incrimination. Indeed, the post-conviction court recognized that Petry "was not formally advised" of those rights. *Appellant's App. Vol. II* at 55. However, subsequent to the *Ponce* decision, this court held, "*Boykin* does not require that the record of the guilty-plea proceeding show that the accused was formally advised that entry of his guilty plea waives certain constitutional rights, nor does *Boykin* require that the record contain a formal waiver of these rights by the accused." *Winkleman v. State*, 22 N.E.3d 844, 851 (Ind. Ct. App. 2014) (citing *Dewitt v. State*, 755 N.E.2d 167, 171 (Ind. 2001)), *trans. denied.* "Rather, *Boykin* only requires a conviction to be vacated *if the defendant did not know or was not advised* at the time of his plea that he was waiving his *Boykin* rights." *Id*. (emphasis added). Here, the post-conviction court determined that Petry did not establish by a preponderance of the evidence that he did not know that he was waiving the two rights, and we agree.

[19] In denying Petry's petition for post-conviction relief, the post-conviction court relied, in part, on *Winkleman*. In that case, during the first phase of his jury trial, but before the jury convicted him, Winkleman pleaded guilty to an habitual offender enhancement. On appeal, Winkleman argued that the trial court failed to advise him of his *Boykin* rights before he pleaded guilty to the

habitual offender enhancement, and this failure required that his plea be vacated. The *Winkleman* court rejected the defendant's claim. In so doing, the court initially observed that Winkleman stated to the trial court that it was "not necessary" for the trial court to advise him of his rights. *Id*. at 851. Additionally, the *Winkleman* court relied on the fact that Winkleman admitted to the habitual offender enhancement "'in the midst of a trial, where the *Boykin* rights are on display for all to see.'" *Id*. at 852 (quoting *Hopkins v. State,* 889 N.E.2d 314, 317 (Ind. 2008)). The *Winkleman* court concluded that "Winkleman failed to establish on this record that he did not know he was waiving his *Boykin* rights." *Id*.

[20] Similar to *Winkleman*, where the defendant pleaded guilty to being an habitual offender in the "midst of trial," Petry pleaded guilty to the habitual offender enhancement just after the completion of the first phase of his jury trial. *Id*. Petry did not testify at his post-conviction hearing that he was unaware of his *Boykin* rights, and, we note that Petry had pleaded guilty to charges at least several times before his admission to the habitual offender enhancement. *State's Trial Exs*. 6, 7, 8. Based on this record, and on *Winkleman*, the post-conviction court determined that Petry failed to show that he did not know he was waiving his *Boykin* rights when he pleaded guilty to the habitual offender enhancement. We cannot say that the post-conviction court's decision was contrary to law.

[21] Petry suggests that we should not follow *Winkleman* because it "implicitly shifted" the State's burden under *Ponce* "to prove that the petitioner nonetheless knew that he was waiving such rights" onto him, and it thereby "contravened

[our] Supreme Court's precedent" in *Ponce*. *Appellant's Br*. at 16. We reject this argument for two reasons. First, we find that *Ponce* is distinguishable and does not control our decision today. *Ponce* involved review of a Class A felony drug dealing conviction based upon an uninformed guilty plea and, thus, was not in the context of a defendant admitting to an habitual offender sentencing enhancement immediately following a jury trial. An habitual offender adjudication is not the equivalent of a conviction of a crime. *See Harris v. State,* 964 N.E.2d 920, 927 (Ind. Ct. App. 2012) ("It is well settled that a habitual offender finding does not constitute a separate crime, nor does it result in a separate sentence. . . . Rather, a habitual offender finding results in a sentence enhancement imposed upon the conviction of a subsequent felony."), *trans. denied*.

[22] Second, to the extent that Petry's claim is that *Winkleman* is not good law because it "contravenes" our Supreme Court's precedent, *Appellant's Br*. at 16, we note that our Supreme Court denied the defendant's request for transfer in *Winkleman*. "We are aware that when the [S]upreme [C]ourt denies a petition for transfer, it is not necessarily approving either the result or the reasoning in that case, because the petition may not place the issue in question squarely before the [S]upreme [C]ourt." *Roberts v. State*, 725 N.E.2d 441, 446 (Ind. Ct. App. 2000), *trans. denied*. "Nevertheless, we may ascribe some meaning to the denial of transfer." *Id*. In *Winkleman*, our colleagues stated that a defendant seeking to set aside an habitual offender guilty plea need do more than show only that he was not advised of his *Boykin* rights at the habitual phase of trial;

he must show that he "did not know or was not advised" of the *Boykin* rights at the time of his habitual offender guilty plea, 22 N.E.3d at 851, and, in that case, Winkleman failed to do so. Our Supreme Court chose not to address that determination.

[23] Similarly, in the present case, the post-conviction court determined that Petry had not shown by a preponderance of the evidence that he did not know he was waiving his *Boykin* rights when he admitted to being an habitual offender. On appeal, Petry has not established that the evidence as a whole unmistakably and unerringly leads to a conclusion contrary to that of the post-conviction court, and, therefore, we affirm. *See Dewitt,* 755 N.E.2d at 170-71 (applying "rigorous" post-conviction standard of review, Supreme Court affirmed the post-conviction court's decision that defendant knew he was waiving *Boykin* rights when he pleaded guilty to burglary charge and held that "we cannot conclude that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court").

[24] Affirmed.

Baker, J., and Bradford, J., concur.