

**FILED**

Sep 21 2015, 8:37 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Noah T. Williams
Monroe County Public Defender Agency
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Brian Reitz
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Carlos I. Nunez,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 21, 2015

Court of Appeals Case No.
53A04-1407-CR-346

Appeal from the Monroe Circuit Court.
The Honorable Marc R. Kellams, Judge.
Cause No. 53C02-1212-FB-1173

**Shepard, Senior Judge**

[1] By both law and practice, American courts have long been especially concerned that criminal defendants not give up various rights by virtue of being misled or uninformed or threatened. Here, the question is whether a conviction must be set aside because the defendant who was asking to waive trial by jury did not tell the trial judge that his request was voluntary.

# Facts and Procedural History

[2] In December 2012, the State charged appellant Carlos I. Nunez with rape as a class B felony. Ind. Code § 35-42-4-1 (1998). Nunez subsequently filed a verified waiver of jury trial, and the trial court accepted the waiver after a hearing in which Nunez participated. Following a bench trial, the court found Nunez guilty as charged and sentenced him to ten years.

# Issue

[3] Nunez presents the issue on appeal this way: whether the trial court wrongly accepted his waiver because it was not voluntary and intelligent.

# Discussion and Decision

## I. Were There Omissions in Spanish Waiver Form?

[4] In seeking to waive jury, Nunez signed two waiver forms — one in English and one in Spanish. Nunez's appeal rests on a claim that the Spanish version was incomplete.

[5] The English version informed Nunez that (1) he had a right to a jury trial, (2) the jury would consist of six or twelve members, (3) the jury would listen to the evidence, the arguments, and the instructions, and the verdict would have to be unanimous, (4) if the waiver was accepted, the court would make a determination as to his guilt without the use of a jury, and (5) his guilt would be determined beyond a reasonable doubt by the judge alone. The form also declared that (6) no one made any promises of special treatment or leniency, or

made threats to coerce him to waive his right to a jury trial, (7) the waiver was made freely, knowingly, understandingly, and voluntarily, and (8) he was affirming, under the penalties for perjury, that the representations in the waiver were true. Nunez and his counsel both signed the waiver. They each signed the Spanish version as well.

[6] Subsequently, in open court with an interpreter present, the court questioned Nunez about the waiver. In the course of this discussion, Judge Kellams asked Nunez if he had signed the waivers and if he understood that he was giving up the right to a jury trial. Nunez, through the interpreter, responded in the affirmative. The court also asked if Nunez had any questions about the fact that the trial would be conducted by the judge and the judge would make the determination about guilt. Nunez said he did not. The court determined the waiver was adequate.

[7] The Spanish version of the written waiver appears to mirror the English version, and Nunez apparently accepts that it covers the various explanations about jury trials and bench trials. But Nunez says the Spanish waiver lacks two provisions that are present in the English version: (1) a declaration that no promises or threats coerced him to waive his right to a jury trial, and (2) a declaration that the waiver was being made knowingly, understandingly, and voluntarily.

[8] Assuring justice under circumstances where some language barrier exists that might affect the interests of a participant with limited English proficiency is a

matter of commitment and substantial effort for Indiana's judiciary. As Justice Rucker wrote recently, "For the last decade the State of Indiana has endeavored to create a more comprehensive and centralized interpreter program that ensures competent interpreter services in order to improve the quality of language access for LEP [Limited English Proficiency] litigants." *Ponce v. State*, 9 N.E.3d 1265, 1269 (Ind. 2014).[1] Speaking for a unanimous court, he emphasized the need for careful attention to language issues "lest we run the risk of diminishing our system of justice by infringing upon the defendant's rights of due process." *Id.*

[9]     Proceedings in the trial court pursuant to a writ in aid of appellate jurisdiction have produced debates about where the Spanish form came from and the like,

---

[1] Justice Rucker described several aspects of Indiana's efforts:

> The Indiana Court Interpreter Program is a statewide court interpreter system, which includes a code of ethics for interpreters and sets specific certification standards. *See* Ind. Jud. Branch Div. of State Ct. Admin., *Court Interpreter Certification Program*. About the Program, Introduction, http://www.in.gov/judiciary/interpreter/2384.htm [hereinafter "*Certification Program*"]: *see also* Randall T. Shepard, *Access to Justice for People Who Do Not Speak English*, 40 Ind. L. Rev. 643, 652–57 (2007) (explaining "Indiana's Initiatives on Interpreter Needs"). At present, in conjunction with the National Center for State Courts Consortium, Indiana's certification program includes 22 different languages. *See Certification Program*, Get Certified. However, interpreter services are needed in even more languages; but certification is not currently available. Consequently, our supreme court is considering the efforts of other jurisdictions that employ a process by which interpreters may be classified as "qualified" to conduct simultaneous, in-court, oral interpretation or written translation even though they have not undergone the requirements for court "certification."

*Ponce*, 9 N.E.3d 1269 n.2.

but no dispute about whether the Spanish version signed by Nunez omitted the material he has identified. We take it to be so.

## II. Examining Waivers of Jury

The right to trial by jury, guaranteed by both the state and federal constitutions, is a bedrock of our criminal justice system. Although this right may be waived, Indiana stipulates that waiver may occur only when the defendant personally waives and only when the record reflects that action in writing or in open court. *Kellems v. State*, 849 N.E.2d 1110 (Ind. 2006). These requirements ensure that the waiver is knowing, intelligent, and voluntary, with sufficient awareness of the surrounding circumstances and the consequences. *Id.*

The federal courts follow analogous practices. Trial by jury may be waived as long as four conditions are met: (1) the waiver is in writing, (2) the government consents, (3) the court accepts the waiver, and (4) the waiver is made voluntarily, knowingly, and intelligently. *United States v. Duarte-Higareda*, 113 F.3d 1000, 1002 (9th Cir. 1997). As for the fourth requirement, defendants should be informed that (1) twelve members of the community compose a jury, (2) the defendant may take part in jury selection, (3) a jury verdict must be unanimous, and (4) the court alone decides guilt or innocence if the defendant waives a jury trial. *Id.* In addition, the court should question the defendant to ascertain that the defendant understands the benefits and burdens of a jury trial and its waiver, especially where the record indicates a special disadvantage or disability bearing upon the defendant's understanding of the waiver. *Id.*

[12]  So, what happens when a person convicted after a bench trial seeks to set aside the conviction on grounds that such procedures were inadequate?[2]  In light of the fact that a person convicted by trial or plea is no longer presumed innocent, *Williams v. State*, 273 Ind. 547, 549-50, 406 N.E.2d 241, 243 (1980), the prevailing rule is that he bears the burden of establishing grounds on which the conviction should be set aside.

[13]  There is but one exception to this general rule.  It is an important but narrow exception applicable to guilty pleas under collateral attack.  There, when the convicted challenger can show that the record is silent about whether he knew he was giving up three critical rights – trial by jury, facing the accusers, and the right against self-incrimination – the challenger prevails.  *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).  "Presuming waiver from a silent record is impermissible," Justice Douglas wrote for the Court.  *Id.* at 242.  This rule was later described as necessary to ensure that the decision to plead was voluntary and intelligent and not the product of ignorance, terror, or deception.  *See Brady v. U.S.*, 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970).[3]

---

[2] It but states the obvious that whether a party can ask for a bench trial and then seek relief on direct appeal because the court granted the request is a non-trivial question.  The State has elected not to challenge the availability on appeal of the instant issue.

[3] While some members of the Court later argued that the *Boykin* list was not exhaustive, they did not prevail. *Neely v. Pennsylvania*, 411 U.S. 954, 93 S. Ct. 1934, 36 L. Ed. 2d 416 (1973) (Douglas, J., dissenting, with whom Stewart and Marshall, JJ., concur) (asserting that the right to be proven guilty beyond a reasonable

[14]     Aside from the *Boykin* exception applicable to guilty pleas, the U.S. Supreme Court and federal circuits apply the general rule on burden of proof, including with respect to claims about waiver of jury:

> If the result of the adjudicatory process is not to be set at naught, it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality.

*Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 281, 63 S. Ct. 236, 87 L. Ed. 268 (1942). As the Sixth Circuit said more recently, "Although we will not presume waiver from a silent record, the burden of demonstrating that a waiver of jury trial was not valid lies with the defendant who waived it." *Sowell v. Bradshaw*, 372 F.3d 821, 832 (6th Cir. 2004), *cert. denied*, 544 U.S. 925, 125 S. Ct. 1645, 161 L. Ed. 2d 485 (2005). This accords with the Seventh Circuit's declaration that a defendant who "understood that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge" has knowingly and intelligently waived his right to trial by jury. *U.S. ex rel. Williams v. DeRobertis*, 715 F.2d 1174 (7th Cir. 1983), *cert. denied*, 464 U.S. 1072, 104 S. Ct. 982, 79 L. Ed. 2d 219 (1984).

---

doubt is a *Boykin* right); *Johnson v. Ohio*, 419 U.S. 924, 95 S. Ct. 200, 42 L. Ed. 2d 158 (1974) (Douglas, J., dissenting, with whom Brennan and Marshall, JJ., concur) (asserting that speedy trial is a *Boykin* right).

At the heart of the voluntary and intelligent requirement, of course, is concern that a defendant might waive jury out of ignorance or as a result of coercion or deception. In this case, the straightforward claim is that Nunez did not affirmatively tell the trial court that his decision to waive was voluntary and intelligent. Like the Sixth Circuit, we conclude that an appellant unable to point to actual evidence of some miscarriage like ignorance or coercion cannot prevail on direct appeal. *See U.S. v. Sammons*, 918 F.2d 592, 597 (6th Cir. 1990).

## III. Protecting Defendants from Coercion or Ignorance

Indiana has long been solicitous of claims about coercion or ignorance and provided a mechanism by which they can be made. Although there has been a presumption that one who pleaded guilty, for example, had done so voluntarily and intelligently, Indiana courts did not hesitate to set aside convictions when it appeared that a defendant pleaded guilty through coercion or misapprehension of the nature of the proceedings.

Several generations before the U.S. Supreme Court held that states were required to provide an avenue for such claims, Indiana resurrected the ancient common law writ of *coram nobis* as a vehicle by which to provide relief to defendants whose rights had been violated. *See, e.g.*, *Sanders v. State*, 85 Ind. 318 (1882) (prisoner whose plea is induced by fear of a lynch mob entitled to withdraw his plea and have a trial); *Myers v. State*, 115 Ind. 554, 18 N.E. 42 (1888) (plea induced by false promises rendered to a defendant acting without legal representation should be set aside). Having provided a way to correct

manifest injustice imposed in earlier proceedings, Indiana courts have nevertheless felt the tug of the competing values in play during such processes: (1) the need to vindicate federal and state rights by correcting errors, and (2) the need to bring proceedings to a rest, especially where the passage of time reduces the possibility that a new trial will be reliable. Note, *Habeas Corpus and Coram Nobis in Indiana*, 26 Ind. L.J. 529 (1951).

[18] If there is actually any evidence that Nunez's waiver was the product of coercion or improper inducements, Indiana courts are open to receive it.

## Conclusion

[19] For the reasons stated, we affirm the trial court.

[20] Affirmed.

[21] Kirsch, J., and Crone, J., concur.