## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 15 2019, 9:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Donato Luna-Quintero
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Donato Luna-Quintero,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

May 15, 2019

Court of Appeals Case No.
18A-PC-657

Appeal from the Marion Superior Court

The Honorable Kurt M. Eisgruber, Judge

The Honorable Steven J. Rubick, Magistrate

Trial Court Cause No.
49G01-1006-PC-50581

**Robb, Judge.**

# Case Summary and Issue

[1] Donato Luna-Quintero appeals the denial of his petition for post-conviction relief, raising one restated issue for our review: whether the post-conviction court erred in determining Luna-Quintero's trial counsel was not ineffective for his handling of Luna-Quintero's waiver of his right to trial by jury. Concluding Luna-Quintero has failed to prove his trial counsel was ineffective and therefore, the post-conviction court did not err, we affirm.

# Facts and Procedural History

[2] In 2010, Luna-Quintero was charged with murder and carrying a handgun without a license. At a pre-trial conference on June 23, 2011,[1] Luna-Quintero filed a verified waiver of trial by jury. The waiver indicated that Luna-Quintero had completed schooling through high school or had earned his G.E.D.; understood he had the "absolute right to a jury trial"; had been "fully advised" by his attorney of his constitutional rights, understood, and waived those rights; asked "that the case be tried by the Court without a jury"; and made the waiver "freely, knowingly, and voluntarily." Appellant's [PCR] Appendix, Volume One at 15. The waiver was signed by Luna-Quintero and his attorney Robert Alden and indicated that it had been translated by Albert Serrano. Serrano is also an attorney, although he was not representing Luna-Quintero in that

---

[1] Luna-Quintero's case was set for jury trial on June 27, 2011.

capacity. He had been hired by Alden to assist in meetings with Luna-Quintero because Alden did not speak Spanish.

[3] The trial court held a hearing on the waiver that same day. The interpreter was sworn in and affirmed that he would "justly and truly and impartially interpret to Donato Luna-Quintero the oath [the court was] about to administer to him, any questions which may be asked of him and the answers that he shall give to such questions[.]" Transcript of Evidence, Volume II at 4.[2] The trial court asked Luna-Quintero if he understood "that you have a Constitutional right to have a trial by jury. That's a trial in which 12 people make a decision based on the evidence that they hear in court. And by signing this waiver of trial by jury, you're waiving that Constitutional right and this case will be tried to a judge." *Id.* at 5. Luna-Quintero answered, "Yes." *Id.* Luna-Quintero also affirmed that his signature was on the waiver form, that someone had interpreted the form for him, and that he was waiving his jury trial right of his own free will. Alden indicated that he would not usually counsel a client to waive a jury in a murder trial, but "I asked my client why he was doing this. He provided me an answer that made sense. I don't think it's necessary for me to state on the record the reason why but I want the Court to know that it was not taken lightly." *Id.* at 5-6. The trial court then found that Luna-Quintero had

[2] The official court interpreter is not named in the transcript.

knowingly and voluntarily waived his right to a trial by jury, vacated the jury trial setting, and reset the case for a bench trial.

[4] Following the two-day bench trial in August 2011, the trial court found Luna-Quintero guilty as charged and sentenced him to fifty years. Luna-Quintero appealed his conviction, contending the State's evidence was insufficient to overcome his claim of self-defense. This court disagreed and affirmed his conviction. *Luna-Quintero v. State*, 2012 WL 2109079 at *2 (Ind. Ct. App. Jun. 12, 2012).

[5] Luna-Quintero filed a pro se petition for post-conviction relief on March 4, 2013, alleging that he was denied the effective assistance of trial and appellate counsel. Specifically, with respect to his trial counsel, Luna-Quintero alleged Alden failed to investigate the facts and circumstances of his case, failed to interview him and his co-defendant, failed to support his claim of self-defense due to failure to investigate the crime scene, and failed to advocate for his right to a jury trial.[3] On October 4, 2016, Luna-Quintero filed his "Truth Affidavit," Appellant's [PCR] App., Vol. One at 39, which the trial court indicated it would treat "as your argument in support of your petition[.]" *Id.* at 54. Luna-Quintero's "Truth Affidavit" does not address matters related to his waiver of jury trial, but it does include as an exhibit a copy of an email from the deputy

---

[3] As to his appellate counsel, Luna-Quintero alleged counsel failed to adequately argue the self-defense issue and failed to raise the waiver of jury trial issue. Luna-Quintero does not make any argument about appellate counsel in this appeal.

prosecutor in his case to Alden and Serrano dated June 16, 2011. The email indicates knowledge that Alden and Serrano would be meeting with Luna-Quintero that day, references a plea offer, and indicates that if Luna-Quintero does not accept the plea agreement, a waiver of jury trial might "be a realistic possibility" in part because "I would think he would get a 5 to 10 year benefit if he were convicted at bench [trial] instead of jury because he didn't put a bunch of people in the community thru [sic] the hassle of a trial." *Id.* at 51.

[6] Alden was the sole witness at the hearing on the petition for post-conviction relief. In preparation for the PCR hearing, Alden had tried to find Luna-Quintero's case file but discovered that he had given it to Luna-Quintero's appellate counsel for the direct appeal and it had not been returned. He was, therefore, relying largely on his memory of the case and the proceedings. Alden testified that in preparation for Luna-Quintero's murder trial, he had conducted discovery, deposed witnesses, and hired a bilingual attorney to assist in discussions when he met with Luna-Quintero. His investigation revealed "that the State had multiple . . . eye witnesses indicating that [Luna-Quintero] had killed the alleged victim," and he discussed what he had discovered with Luna-Quintero. Tr., Vol. II at 25. He encouraged Luna-Quintero to take a plea agreement, but Luna-Quintero refused. With respect to the jury trial waiver, Alden testified:

> [O]bviously waiving a jury is a very very very important decision
> so I hired a – an attorney to come over to the jail and explain the
> benefits and detriments of the jury trial to you –what a jury trial
> was and I think that you made the decision because I would – I

would rarely make a decision to just waive jury and try a – a case to the Court but honestly I don't remember the details of that. All I do know is that there's no question in my mind that I went over with you in detail the waiver of that jury trial before it was waived. There's no question in my mind.

*Id.* at 29. Alden speculated that the reason for the jury trial waiver might have been that "a court would understand the legal defense of self-defense maybe sometimes better than a jury" or that the court might be more lenient in sentencing if Luna-Quintero waived a jury trial. *Id.* at 31-32. Regardless of the reason, Alden was certain that the decision was Luna-Quintero's, because in trying over thirty murder cases, this was the only one he could recall having waived a jury trial. With respect to the hiring of Serrano, who was an attorney but not an authorized in-court interpreter, Alden stated:

I know that he is hired by the Public Defender's Office to represent them in – in the system in interpretation situations . . . . [T]he reason [I hired him] is that he is a lawyer and he understands the nature of the cases. I allowed him to read a lot of the discovery and I wanted to make sure that if you had any questions regarding the evidence that he would be able to explain it to you as a lawyer and I had confidence that he was gonna be able to do that . . . .

*Id.* at 29-30. Luna-Quintero did not offer any other evidence or testimony in support of his petition.

[7] The parties were given time to file proposed findings of fact and conclusions. Luna-Quintero did not file a proposed order even after a considerable extension of time to do so. On February 21, 2018, the post-conviction court issued its

findings of fact and conclusions of law denying post-conviction relief. As relevant to this appeal, the post-conviction court concluded:

> [Luna-Quintero] claims that trial counsel [w]as ineffective because trial counsel failed to advocate his constitutional right to a jury trial. While it is not entirely clear exactly what [Luna-Quintero] is claiming, in any event the Court finds that the evidence is clear that trial counsel discussed the decision to waive jury extensively with [Luna-Quintero]. From the testimony at the evidentiary hearing, it is apparent that this was a strategic choice, made after careful consideration. While [Luna-Quintero] certainly had a right to a jury trial, such a right can be waived. The available record provides no basis to find that the decision to waive jury was not proper, nor any basis to find that the trial counsel's advice was outside professional norms. Accordingly the Court finds that [Luna-Quintero] has . . . failed to meet the burden of proof on this issue.

Appealed Order at 8 (citations omitted). The post-conviction court also addressed Luna-Quintero's other claims of trial counsel ineffectiveness and claims that appellate counsel was ineffective, concluding in each instance that Luna-Quintero failed to meet his burden of proof.[4] The post-conviction court therefore denied Luna-Quintero's petition for post-conviction relief. Luna-Quintero now appeals.

# Discussion and Decision

---

[4] Luna-Quintero does not challenge the post-conviction court's conclusion with respect to these claims on appeal.

# I. Post-Conviction Standard of Review

[8] "Post-conviction proceedings do not afford the petitioner an opportunity for a super appeal, but rather, provide the opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal." *Turner v. State*, 974 N.E.2d 575, 581 (Ind. Ct. App. 2012), *trans. denied*. Because post-conviction proceedings are civil in nature, the petitioner must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). "The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses." *Woods v. State*, 701 N.E.2d 1208, 1210 (Ind. 1998), *cert. denied*, 528 U.S. 861 (1999). Thus, we may not reweigh the evidence or reassess the credibility of the witnesses and we consider only the evidence and reasonable inferences supporting the judgment. *Hall v. State*, 849 N.E.2d 466, 468-69 (Ind. 2006). A petitioner who has been denied post-conviction relief faces a "rigorous standard of review" on appeal. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001). The petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Strowmatt v. State*, 779 N.E.2d 971, 975 (Ind. Ct. App. 2002).

[9] The post-conviction court made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), and therefore, we cannot affirm the judgment on any legal basis, but rather, we must determine if the court's findings are sufficient to support its judgment. *Graham v. State*, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), *aff'd on reh'g*, 947 N.E.2d 962. We

accept the post-conviction court's findings of fact unless they are clearly erroneous, but we do not defer to the post-conviction court's conclusions of law. *Wilson v. State*, 799 N.E.2d 51, 53 (Ind. Ct. App. 2003).

# II. Ineffective Assistance of Counsel

## A. Standard of Review

Luna-Quintero claims the post-conviction court erred in concluding his trial counsel did not render ineffective assistance with regard to his waiver of a jury trial. We review claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on such a claim, the petitioner must show 1) his counsel's performance was deficient and 2) the lack of reasonable representation prejudiced him. *Id.* at 687. These two prongs are separate and independent inquiries. *Manzano v. State*, 12 N.E.3d 321, 326 (Ind. Ct. App. 2014), *trans. denied*, *cert. denied*, 135 S.Ct. 2376 (2015). Therefore, "if it is easier to dispose of an ineffectiveness claim on one of the grounds instead of the other, that course should be followed." *Talley v. State*, 736 N.E.2d 766, 769 (Ind. Ct. App. 2000).

The first prong requires that the petitioner show counsel's representation fell below an objective standard of reasonableness and that counsel committed errors so serious that petitioner did not have "counsel" as guaranteed by the Sixth Amendment of the United States Constitution. *Garrett v. State*, 992 N.E.2d 710, 718-19 (Ind. 2013). To satisfy the second prong, the petitioner must show a reasonable probability that, but for counsel's errors, the result of

the proceeding would have been different. *Id*. at 719. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

[12] We afford counsel "considerable discretion in choosing strategy and tactics, and we will accord those decisions deference." *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001), *cert. denied*, 537 U.S. 839 (2002). We also recognize a strong presumption that counsel rendered adequate legal assistance. *Id*. The defendant must offer "strong and convincing evidence to overcome this presumption." *Smith v. State*, 822 N.E.2d 193, 202 (Ind. Ct. App. 2005), *trans. denied*.

## B. Waiver of Jury Trial

[13] The Sixth Amendment to the United States Constitution provides a person charged with a criminal offense has the "right to a speedy and public trial, by an impartial jury[.]" Article 1, section 13 of the Indiana Constitution provides likewise. The jury trial right is fundamental and personal and therefore any waiver of the right to a jury trial must be the knowing and voluntary choice of the defendant himself. *Perkins v. State*, 541 N.E.2d 927, 928 (Ind. 1989); *see also* Ind. Code § 35-37-1-2 (stating that "the *defendant* and the prosecuting attorney, with the assent of the court, may submit the trial to the court") (emphasis added). A knowing, voluntary, and intelligent waiver of the right to a jury trial cannot be inferred from a record which does not evidence such personal choice. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969); *Poore v. State*, 681 N.E.2d 204, 206

(Ind. 1997). Rather, the defendant must personally indicate either in writing or verbally in open court that he or she wishes to waive a jury trial and the waiver must be made part of the record. *Kellems v. State*, 849 N.E.2d 1110, 1112 (Ind. 2006). There is no requirement that a trial court orally advise a defendant of his right to a jury trial and the consequences of waiving that right. *Coleman v. State*, 694 N.E.2d 269, 278 (Ind. 1998).

[14] Luna-Quintero contends his trial counsel was ineffective when he "failed to advocate for Luna-Quintero's constitutional right to a trial by jury and allowed Luna-Quintero to make a waiver of that right that was not 'knowing, voluntary, and intelligent.'" Amended Appellant's Br. at 18. Luna-Quintero does not dispute that he indicated to the trial court that he wished to waive his right to trial by jury or that his desire to do so is apparent from the record. Indeed, at the final pretrial conference in this case, Luna-Quintero filed a written, signed waiver of jury trial that stated:

> 4. I understand that I have an absolute right to a jury trial in this case.
>
> 5. I have been fully advised, by my attorney, of my constitutional rights to trial by jury and I understand my constitutional rights to trial by jury.
>
> 6. I hereby give up my constitutional rights to a trial by jury and ask that the case be tried by the Court without a jury.
>
> 7. I declare that no person has made any promise or suggestions of any kind to me or, within my knowledge to anyone else, that I

would receive any favors, special treatment or any other form of leniency if I decided not to have a jury trial.

I declare that no person has made any threat of any kind to me, or within my knowledge to anyone else, to coerce me not to have a jury trial.

I declare that this waiver is made and executed by me freely, knowingly, and voluntarily.

Appellant's [PCR] App., Vol. One at 15.[5] Before accepting the waiver, the trial court engaged in the following colloquy with Luna-Quintero:

The Court: Is this your signature, sir?
[Luna-Quintero]: Yes.
The Court: And did you have the chance to have someone interpret this sheet to you?
[Luna-Quintero]: Yes.
The Court: So you understand that you have a Constitutional right to have a trial by jury. That's a trial in which 12 people make a decision based on the evidence that they hear in court. And by signing this waiver of trial by jury, you're waiving that Constitutional right and this case will be tried to a judge.
[Luna-Quintero]: Yes.
The Court: Okay. And you agree to that?
[Luna-Quintero]: Yes.
The Court: No one's forced you to waiver your trial right?
[Luna-Quintero]: No.

---

[5] The form also states, "I can read, write, and understand the English language," *id.*, which is apparently not the case with Luna-Quintero. However, the form indicates that it was translated, and the trial court inquired into the translation when it questioned Luna-Quintero about his waiver. Obviously, it would have been better practice to strike that line of the form in this case, but we see no reason to question the validity of the form given the surrounding circumstances.

The Court: You're doing this of your own free will?

[Luna-Quintero]: Yes.

Tr., Vol. II at 4-5. Alden informed the court that "Serrano, who's a lawyer, is the person who interpreted the jury waiver to him and I know interpreted it verbatim to him and informed me he interpreted it verbatim to him and explained the terms as well that were in the waiver." *Id.* at 6. Serrano affirmed the accuracy of Alden's statement, specifically that he did explain the form to Luna-Quintero. Luna-Quintero admits in his brief that Alden "did, in fact, discuss the decision to waive jury trial with [him], through Serrano[.]" Amended Appellant's Br. at 16. Alden also informed the trial court that he would not usually advise waiving a jury trial in a murder case, but that Luna-Quintero himself explained to Alden why he wanted to waive a jury, the reason "made sense," and the decision to sign off on Luna-Quintero's waiver was "not taken lightly." *Id.* at 5-6. The State consented to the waiver and the trial court, by signing the written waiver, found Luna-Quintero "has knowingly and voluntarily waived [his] right to a trial by jury." Appellant's [PCR] App. at 16.

[15] Instead, Luna-Quintero contends neither his trial counsel nor the trial court gave him the specific advisements that render a waiver voluntary, knowing, and intelligent. In claiming his trial counsel was ineffective for failing to adequately advise him and allowing him to waive a jury trial, Luna-Quintero relies on the following language from *Nunez v. State*, 43 N.E.3d 680 (Ind. Ct. App. 2015), *trans. denied*:

Trial by jury may be waived as long as four conditions are met: (1) the waiver is in writing, (2) the government consents, (3) the court accepts the waiver, and (4) the waiver is made voluntarily, knowingly, and intelligently. *United States v. Duarte-Higareda*, 113 F.3d 1000, 1002 (9th Cir. 1997). As for the fourth requirement, defendants should be informed that (1) twelve members of the community compose a jury, (2) the defendant may take part in jury selection, (3) a jury verdict must be unanimous, and (4) the court alone decides guilt or innocence if the defendant waives a jury trial. *Id.* In addition, the court should question the defendant to ascertain that the defendant understands the benefits and burdens of a jury trial and its waiver, especially where the record indicates a special disadvantage or disability bearing upon the defendant's understanding of the waiver. *Id.*

*Id.* at 683. Luna-Quintero specifically notes that because he has a "special disadvantage" in not speaking English, the lack of proper advisements caused him to be "ignorant of what his right to trial by jury entailed[.]" Amended Appellant's Br. at 14.[6]

[16] The above-quoted language from *Nunez* was introduced with the sentence, "The federal courts follow analogous practices[,]" making it clear that what followed

---

[6] To an extent, Luna-Quintero's ineffective assistance of counsel argument is interwoven with an independent challenge to his waiver of jury trial as not knowing, intelligent, or voluntary due to the trial court's failure to properly advise him. Such a claim would have been available on direct appeal but was not raised and is therefore waived for purpose of post-conviction unless it constitutes fundamental error. *See Evolga v. State*, 722 N.E.2d 370, 372 (Ind. Ct. App. 2000). Luna-Quintero has not alleged fundamental error, however. Luna-Quintero *did* raise his appellate counsel's failure to address this issue on appeal in his post-conviction petition but does not pursue his claim of ineffective assistance of appellate counsel on appeal. We will, therefore, address the jury trial waiver only in the context of his ineffective assistance of trial counsel claim. *See Bahm v. State*, 794 N.E.2d 444, 445 (Ind. Ct. App. 2003) (noting issues waived as free-standing arguments may be raised in post-conviction proceedings as arguments supporting a claim of ineffective assistance of trial counsel), *trans. denied*.

described the practice in federal court, which is based in part on Federal Rule of Criminal Procedure 23(a) which requires a waiver to be in writing and in part on a rule adopted in *United States v. Scott*, 583 F.2d 362 (7th Cir. 1978) and elaborated upon in *United States v. Delgado*, 635 F.2d 889, 890 (7th Cir. 1981). The *Scott* case purported to impose a supervisory rule on district courts in the Seventh Circuit requiring a court to interrogate the defendant to ensure that he understands his right to a jury trial and the consequences of waiver before accepting a waiver of jury trial. 583 F.2d at 364. *Delgado* advised courts of the specific questions that should be asked in the formal jury waiver inquiry. 635 F.2d at 890. As later explained in *United States v. Rodriguez*, however, these additional warnings were not mandatory, but rather "are called for as a matter of prudence. Lesser (even no) warnings do not call into question the sufficiency of the waiver so far as the Constitution is concerned." 888 F.2d 519, 527 (7th Cir. 1989); *see also United States v. Cochran*, 770 F.2d 850, 852-53 (9th Cir. 1985) (noting that the Ninth Circuit, "along with a number of other circuits," believes that a district court should engage in detailed questioning of the defendant before accepting a waiver of the right to a jury trial but also noting that it is not mandatory). Additionally, this federal practice is not binding on state courts. *See McSchooler v. State*, 15 N.E.3d 678, 683 (Ind. Ct. App. 2014). In fact, the Indiana Supreme Court has declined to hold that more comprehensive advisements must be given in order for a waiver of the right to a jury trial to be accepted. *Hutchins v. State*, 493 N.E.2d 444, 445 (Ind. 1986). Therefore, it was not below an objective standard of reasonableness for Alden to not specifically advise Luna-Quintero of the *Delgado* factors, nor was it below an objective

standard of reasonableness for Alden to not object to the trial court's inquiry for lacking those advisements.

[17] This brings us back to the Indiana practice, which "stipulates that waiver may only occur when the defendant personally waives and only when the record reflects that action in writing or in open court." *Nunez*, 43 N.E.3d at 683. The trial court record indicates that Luna-Quintero personally waived his right to a jury trial in writing and was questioned in open court before the trial court found his waiver to be knowing and voluntary. Luna-Quintero affirmed in response to the trial court's questioning that he understood he had a right to a trial by a jury of twelve people and that by waiving that right his case would be decided by a judge. Alden, a seasoned attorney who had participated in at least thirty murder trials, indicated he had hired a bilingual attorney to assist him in communicating with Luna-Quintero[7] and assured the trial court that Luna-Quintero was making an informed decision when he waived a jury trial. Although Alden offered at the post-conviction hearing some possible explanations for the waiver in retrospect, the contemporaneous trial court record indicates it was *Luna-Quintero* who had to convince Alden to agree to a

---

[7] We do not take lightly Luna-Quintero's suggestion that as a non-English speaking defendant, he was disadvantaged in this process, as "[a]ssuring justice under circumstances where some language barrier exists that might affect the interests of a participant [in the criminal justice process] with limited English proficiency is a matter of commitment and substantial effort for Indiana's judiciary . . . 'lest we run the risk of diminishing our system of justice by infringing upon the defendant's right of due process.'" *Nunez*, 43 N.E.3d at 682 (quoting *Ponce v. State*, 9 N.E.3d 1265, 1269 (Ind. 2014)). In these circumstances, however, it appears both trial counsel and the trial court appropriately accommodated Luna-Quintero's lack of English proficiency.

waiver of a jury trial, rather than the other way around. Luna-Quintero posits in his brief, based on the e-mail attached to his "Truth Affidavit," that it was actually the State's suggestion that he waive his right to a jury trial and that it was "an improper inducement bearing a coercive effect." Amended Appellant's Br. at 16. Even if it was the possibility—not promise—of a reduced sentence that caused Luna-Quintero to decide to waive a jury trial, that is a strategic decision in a case in which the evidence showed Luna-Quintero had twice threatened to shoot the victim in the week prior to the victim's death, fired multiple shots at the victim in the presence of multiple witnesses, left, and then returned to shoot the victim one more time. *See Luna-Quintero*, 2012 WL 2109079 at *2. "We do not 'second-guess' strategic decisions requiring reasonable professional judgment even if the strategy in hindsight did not serve the defendant's interests." *Rondeau v. State*, 48 N.E.3d 907, 916 (Ind. Ct. App. 2016), *trans. denied*. Luna-Quintero offered no testimony or evidence to refute what the trial court record reflects or Alden's recollection of events during the post-conviction proceedings and he has therefore failed to show that the evidence leads "unerringly and unmistakably" to the conclusion that he should be granted post-conviction relief on this claim of ineffective assistance of counsel. *See Strowmatt*, 779 N.E.2d at 975.

# Conclusion

[18] Luna-Quintero has failed to meet the rigorous standard of showing that his trial counsel was ineffective for allowing him to waive his right to a jury trial, as the

evidence shows he knowingly, voluntarily, intelligently, and personally waived the right. He is, therefore, not entitled to post-conviction relief, and the judgment of the post-conviction court is affirmed.

[19] Affirmed.

Baker, J., and Najam, J., concur.